## UNITED STATES v. AMERICAN BELL TELEPHONE Co. and others.[1]

*(Circuit Court, S. D. Ohio, E. D.   November, 1886.)*

1. WRIT AND PROCESS—MOTION TO QUASH SERVICE.

     Where the invalidity, irregularity, or defect in the service of the writ appears upon the face of the return, a motion to quash the service, or abate the writ, is the proper mode of bringing the matter to the attention of the court; but, where the objection does not appear upon the face of the papers, the better rule of practice, where it is sought to question or dispute the facts stated therein, is to do so by plea in abatement, on which an issue may be regularly taken and tried.

2. PARTNERSHIP—SERVICE UPON NON-RESIDENT PARTNER.

     While the interest of a non-resident partner in a partnership doing business in Ohio, in respect to such business, may be subject to the local jurisdiction, if the partnership is properly served in conformity with the statutes of the state, it is, however, well settled that the non-resident partner cannot be brought personally before even the local courts, or be subjected to judgment *in personam*, by service upon the resident partners.

3 WRIT AND PROCESS—EQUITY PRACTICE—SERVICE OF SUBPŒNA.

     In suits in equity, the federal courts are regulated, not by state statutes, but by the judiciary acts, and the rules of equity practice.

4. SAME—AMERICAN BELL TELEPHONE COMPANY.

     The return of a subpœna which recited that the marshal had served the same upon the "American Bell Telephone Company (which is a corporation found and doing business in the Southern district of Ohio) by reading the same to A. D. Bullock, the president of the City and Suburban Telegraph Company, (the said City and Suburban Telegraph Company being an agent and partner of the said the American Bell Telephone Company, within said district,)" fails to show affirmatively the facts required to constitute a valid service, either under the judiciary acts, the rules of practice governing the court, or the statute of Ohio providing for service upon a foreign corporation having a "*managing agent*" in the state.   No presumptions are to be indulged in favor of such a return, so as to give the court jurisdiction over a non-resident corporation.   The return is also irregular, and open to the objection that the marshal did not confine himself to a statement of what he did in executing the subpœnas, but states conclusions of law and fact, apart from what was done.

5. SAME—SERVICE UPON FOREIGN CORPORATIONS.

     In the absence of a voluntary appearance, three conditions must concur or co-exist in order to give the federal courts jurisdiction *in personam* over a corporation created without the territorial limits of the state in which the court is held, viz.: (1) It must appear, as a matter of fact, that the corporation is carrying on its business in such foreign state or district; (2) that such business is transacted or managed by some agent or officer appointed by and representing the corporation in such state; and (3) the existence of some local law making such corporation, or foreign corporations generally, amenable to suit there as a condition express or implied of doing business in the state.

6. SAME—SECTION 739, REV. ST. U. S.—ACT OF CONGRESS, MARCH 3, 1875.

     The judiciary acts (Rev. St. § 739) and act of March 3, 1875, providing that no civil suit or action shall be brought against any person outside of the district in which he resides or may be found at the time of the service of process, do not affect the general jurisdiction of this court, but merely confer a personal privilege or exemption upon the defendant, which can be waived, and is waived, by a foreign corporation, not only by a voluntary appearance to the suit, but by doing business in a state imposing the condition of liability to suit there by service of process on its agent.

7. SAME—SERVICE UPON FOREIGN CORPORATION.

     It is not sufficient to give this court jurisdiction *in personam* over a foreign corporation that it has property rights, however extensive, within the district, or that it has pecuniary interests, however valuable, in business managed and conducted by others.

[1] Reported by J. C. Harper, Esq., of the Cincinnati bar.

v.29F.no.1—2

8. TELEPHONE COMPANIES — LICENSOR AND LICENSEE — BELL TELEPHONE COMPANIES.

The contracts between the American Bell Telephone Company and the local telephone corporations create the relation of licensor and lessor on the one side, and licensee and lessee on the other, and not a relation of agency.

9. CORPORATIONS — FOREIGN CORPORATIONS — DOING BUSINESS IN A STATE.

Whether a foreign corporation is carrying on business in a state must be determined by what it has done, or is doing, rather than by what it may hereafter do, under powers reserved to it in existing contracts, but not yet exercised. For one person to supply the means to another to do business with or on is not the doing of that business by the former.

10. SAME — MANAGING AGENTS — BELL TELEPHONE COMPANIES.

Transactions such as the American Bell Telephone Company has had with the licensee corporations of Ohio, at its place of business in Boston, and not elsewhere, is not the carrying on of business by it in Ohio; nor are such licensee corporations its "managing agents."

11. SAME — SERVICE ON AGENT.

An agent of a foreign corporation upon whom service can be made, must be one actually appointed by or representing the corporation as a matter of fact, not one created by implication or construction, contrary to the intention of the parties.

12. SAME — MANAGING AGENTS.

The term "managing agent" implies the carrying on of the corporate business, or some substantial part thereof, by means of an agent who manages and conducts the same within the limits of the state, for and on account of the foreign corporation.

13. PATENTS FOR INVENTIONS — LICENSE — PATENT-HOLDING CORPORATION — NATIONALIZING.

The right of the patent owner to permit or license the use of the invention is not the creature of the federal franchise or statute, but of the common law; and in exercising this common-law right of licensing others to use its patent, the corporation owner is no more *nationalized* than a private owner would be under the same circumstances; nor does the fact that a patent-holding corporation licenses others to use its patent in a particular state have any more effect and operation in *domesticating* it within such state than the same act on the part of a private owner would have in rendering him a citizen and resident of every state in which his patent might be used.

14. SAME — JURISDICTION — PRACTICE.

Neither the patent law, nor the privileges secured to patentees thereunder, in any way enlarge, modify, or change the judiciary acts in respect to either the territorial jurisdiction of the federal courts, or the proper service of process upon defendants.

15. ACTION — ENTRY OF APPEARANCE.

Allegations in a plea in abatement showing that the cause of action, and the subject-matter of the suit, did not have its origin in Ohio, such plea being presented solely to object to the jurisdiction of the court, and to quash the return of service, do not amount to an appearance of the defendant.

In Equity. Hearing on motion of the American Bell Telephone Company to set aside the marshal's return, and on plea in abatement to the jurisdiction of the court over said company.

*A. G. Thurman, Grosvenor Lowry, Jeff. Chandler,* and *P. H. Kumler,* Dist. Atty:, for the United States.

*Joseph E. McDonald, Richard A. Harrison,* and *J. J. Storrow,* for American Bell Telephone Co.

*Perry & Jenney,* for local telephone companies.

JACKSON, J. Proceeding upon the general theory that a patent is a *contract* between the inventor on the one side, and the government on the other, founded on conditions or considerations prescribed by law, those moving from the former being the production of some new invention or discovery beneficial to the public, in consideration of

which the government grants to the patentee the *exclusive* privilege, for a limited period, to make, vend, and use the invention throughout the United States, with the right to invoke the aid of its courts for the protection and enforcement of these rights or franchises, the complainants seek, by their bill in this case, to have certain letters patent, numbered 174,465 and 186,787, embodying the electric speaking telephone, issued to Alexander Graham Bell, March 7, 1876, and January 30, 1877, respectively, declared void, set aside, and annulled, on the ground that they were fraudulently, surreptitiously, and improperly obtained on the part of said Bell, by means of alleged false statements, on which the government relied, and on the faith of which it was induced to issue said patents. In the event said letters patent should not be declared *wholly* invalid and void, because of the alleged fraud of said Bell in procuring their issuance, the bill further seeks to have said letters patent treated as contracts, "reformed, and modified, as in law and equity and good conscience they ought to be," for the reason that, by inadvertence, accident, and mistake, they embrace more than said Bell was entitled to claim, etc. Alexander Graham Bell, who is averred to be a resident of the District of Columbia, is made a party defendant; but having neither appeared, nor been served with process, he is not before the court.

It is alleged in the bill that prior to the institution of this suit said Alexander Graham Bell had divested himself of all right, title, and interest in the said letters patent, which, together with the grants therein contained, he had transferred to the American Bell Telephone Company, a corporation chartered and duly organized by and under the laws of the state of Massachusetts. The American Bell Telephone Company, as the owner of said letters patent, together with several corporations chartered by the laws of Illinois, Pennsylvania, and Ohio, designated in the pleadings as the "local or licensee" companies, "associates," "copartners," "representatives," and "agents" of the American Bell Telephone Company, are made defendants. There has been no service upon or appearance by the Illinois or Pennsylvania companies. The "local or licensee" corporations of Ohio are before the court by regular service of process and appearance. The averments of the bill touching the jurisdiction of the court over the several defendants are as follows:

"Your orator further shows that the said defendants, the American Bell Telephone Company, duly incorporated under the laws of Massachusetts; and the Central Union Telephone & Telegraph Company, a corporation duly chartered under the laws of Illinois; and the Erie Telephone & Telegraph Company, incorporated under the laws of the state of Massachusetts; and the Central District & Printing Telegraph Company, incorporated under the laws of the state of Pennsylvania; and the Cleveland Telephone Company, the City & Suburban Telegraph Company, the Miami Telephone Company, and the Buckeye Telephone Company, the latter four incorporated under the laws of Ohio; and the defendant, Alexander Graham Bell,—all of whom are made defendants to this bill,—are present, and are found and have property within the jurisdiction of this court, and are now engaged in carrying on the business of telephony, and maintaining a close monopoly thereof, in the

said district,—that is to say, in said Eastern and Western division of said Southern district, and in said Northern district of Ohio,—under and by virtue of said patents to said Bell, *and by the means and in the manner hereinafter set forth.* Your orator further shows that the defendant the American Bell Telephone Company owns all the telephone instruments used in the business of telephony in the United States conducted under the authority of its patents, and especially all those used by said defendants, or any or either of them, in the state of Ohio; the said instruments that are used by them in said state being in number over 20,000. Its local associates and copartners, the said companies, respectively, own their wires and poles, and contribute the same as their shares, respectively, of the capital of the business, while the American Bell Telephone Company *furnishes* the *franchise* and *exclusive* right of said patents, and the telephone instruments, together with a contract stipulation with each of said local companies that the American Bell Telephone Company will also supply counsel, and maintain all such suits, and do all things, to make the business an exclusive and close monopoly, without charge or burden to the local company or corporation; that the local association, copartnership, or joint stock company thus formed, divides the profits of the business between the American Bell Telephone Company and the said local association, on terms agreed upon between the parties, and the share of the American Bell Telephone Company, as your orator is informed and believes, is set apart weekly, and accounted for by said local company, and is collected by agents of the American Bell Telephone Company, who visit said local company for that purpose, or otherwise paid to said American Bell Telephone Company; that the telephone being a necessary agent in conducting commercial business affairs, the said business is carried on *in the manner hereinbefore stated* in every city and town of importance in the United States, and between cities, towns, and places in different states, and is so carried on by said defendants in the Eastern division of the Southern district aforesaid, and in the Western division thereof, and the Northern district of said state; and that the said other defendants or sub-companies are part owners and copartners, agents, and representatives of the said American Bell Telephone Company within each of the divisions and districts aforesaid of the state of Ohio, and that the said American Bell Telephone Company *is entitled to, and has an interest in, all and singular the property, rights, and business of the other said defendants;* that the said American Bell Telephone Company does business in each of said divisions and districts by the sale and grant of licenses to use said patents, by the renting or lease of said telephone instruments, by sharing in the earnings and profits of each of said local companies, by holding stock in the same, by having an interest in the rights, property, and business thereof, by supporting and maintaining each of said companies in litigation, *by the employment of officers, agents, and servants in each of said divisions and districts,* and by divers other means and devices."

Subpœnas were issued to the marshals of the Southern and Northern districts of Ohio for the American Bell Telephone Company, and the local companies resident therein, reciting that the American Bell Telephone Company (impleaded with others) was "*a corporation doing business and found in the state of Ohio.*"

The returns of the marshals thereon were as follows:

"Received this writ at Columbus, Ohio, on the twenty-third day of March, 1886, and on the twenty-fourth day of March, 1886, I served this writ on the defendant the American Bell Telephone Company (which is a corporation doing business and found within the Eastern and Western divisions of the Southern district of the state of Ohio) by reading the same to A. D. Bullock, the president of the City & Suburban Telegraph Company, and delivering him a duly-attested copy thereof, (the said City & Suburban Telegraph Company

being an agent and partner of the said the American Bell Telephone Company, within said Southern district of the state of Ohio,) on March 24, 1886; also served this writ on said defendant the City & Suburban Telegraph Company by reading the same to A. D. Bullock, its president, and delivering to him a duly-attested copy thereof, on March 24, 1886.

"H. C. URNER, U. S. Marshal.
"By RICHARD C. ROHRER, Deputy."

On the writ sent to the Northern district this return was made, viz.:

"*Northern District of Ohio—ss.:* Served this writ on the defendant the American Bell Telephone Company (which is a corporation doing business within said district) by delivering a true and certified copy thereof to James P. McKinstry, vice-president of the Cleveland Telephone Company, the said Cleveland Telephone Company being an agent and partner of the said the American Bell Telephone Company, within said Northern district of Ohio, on March 31, 1886; also served this writ on said defendant the Erie Telephone & Telegraph Company by delivering a true and duly-certified copy thereof to James M. McKinstry, its general superintendent, on March 31, 1886.

"W. F. GOODSPEED, U. S. Marshal.
"By GEO. WYMAN, Deputy."

These returns, while varying slightly in form, recite that the American Bell Telephone Company is *doing business* and *found* within each of said districts, and that the writ was served upon it by reading the same, or delivering a certified copy thereof, to the president or vice-president of the local corporation, with the statement, parenthetically made, that such local company was "the partner and agent" of said American Bell Telephone Company.

On May 3, 1886, the day said defendants were required to enter their appearance in the suit, the American Bell Telephone Company, by its solicitors, entered a special appearance, as follows:

"(No. 229.) In Equity. *The United States of America* v. *The American Bell Telephone Company and others.*

"*To the Clerk of said Court:* Please enter our appearance for the American Bell Telephone Company specially for the purpose of objecting to the jurisdiction and power in said court to compel said corporation, the American Bell Telephone Company, named as defendant herein, to appear or answer in the above cause, and of objecting to the returns of the marshal upon the subpœnas issued in the cause, so far as the same relate to said corporation, and for no other purpose. At the same time we file this paper we file a motion to set aside said returns, and we shall also file a plea to the jurisdiction of the court when the same reaches Columbus, to-morrow.

"HARRISON, OLDS & MARSH, Solicitors."

Thereupon the said defendants filed the following motion, viz.:

"The American Bell Telephone Company, named defendant herein, appearing specially for the purposes only herein set forth, hereby moves the honorable court to set aside so much of the return of the marshal on the several subpœnas issued herein as relates to the American Bell Telephone Company, for the reason that said return is untrue in fact, and to disregard it for the reason that it is insufficient in law; and hereby prays the judgment of this court whether it shall be compelled to appear herein or answer thereto, for the reason that it has not been served with process herein, and is not compellable to appear in response thereto, and has not accepted and does not accept service

thereto, and has not accepted and does not accept service, nor waive due service of process upon it."

The motion then proceeds to set forth the same statement of facts as is contained in the plea in abatement to the jurisdiction of the court over said defendants, filed at the same time. Affidavits were filed in support of said motion, which, together with all the allegations of fact contained therein, are sworn to by the president and general manager of the American Bell Telephone Company.

The plea in abatement to the jurisdiction of the court, containing the same recital of facts as the motion to set aside the marshal's return, is as follows:

"In Equity. *The United States of America* v. *The American Bell Telephone Company et al.* Plea to the Jurisdiction.

"The American Bell Telephone Company, named as defendant herein, appearing specially and solely to object to the jurisdiction and power of this court to compel it to appear and answer in the aforesaid action, by protestation, not confessing or admitting all or any of the matters and things in the said bill of complaint contained to be true in such manner and form as the same are therein and thereby set forth and alleged, pleads to the jurisdiction of this court over it, and for plea says that this court ought not to compel it to appear or to answer in the aforesaid action, because at the time of the commencement of the said suit, and at the times when service of the several writs of subpœna issued therein was attempted or pretended to be made upon it, this defendant was not an inhabitant nor found in the state of Ohio, nor in either of the judicial districts thereof established by the United States, and has not been served with process herein, (although service has been attempted to be made, and a pretended return made upon said subpœna;) and this defendant is not compellable to appear in response to said writs, and does not accept or waive service thereof."

And this defendant further says:

"The American Bell Telephone Company is a corporation established under the general laws of the commonwealth of Massachusetts, and particularly by virtue of chapter 117 of the Acts of 1880, and acts in amendment thereof, to which reference is hereby made. It has always had its place of business and maintained its office in Massachusetts. It was not, at the time of the filing of the bill in this case, nor of the attempted service of the subpœna herein, nor at any time since the filing of the bill, nor before, an inhabitant of, nor a resident of, nor present, nor found, in the state of Ohio, nor the Southern district of Ohio. It was not at either of said times doing business in the state of Ohio, nor engaged in carrying on the business of telephony in the state of Ohio. It had not, at either of said times, any place of business, office, officer, or managing agent, nor any partner, in the state of Ohio. It has not been served with process in the state of Ohio, nor has service been accepted or waived by it, or by any one thereto authorized.

"Neither of the other corporations defendant was, at any of said times, a partner, nor a managing agent, of the American Bell Telephone Company, in the state of Ohio, nor elsewhere.

"The bill seeks to annul, cancel, tear the seal from, and destroy the two patents — No. 174,465 and No. 186,787 — referred to in the bill, and to destroy the property therein of the owner thereof. The American Bell Telephone Company now is, and at all times since the year 1881 has been, the sole owner and possessor of said patents. Said other corporations defendant have never been owners or co-owners or part owners thereof, in law or in equity,.

nor partners with the American Bell Telephone Company in respect of the same, nor agents for the management thereof, nor in possession thereof.

"The bill seeks to cancel, tear the seal from, and destroy said patents upon the alleged ground of alleged fraud in the proceedings of the patentee, Alexander Graham Bell, in procuring the same, and of errors, mistakes, and inadvertences in the officers of the United States in granting the same, and before the respective grants and dates thereof. Such alleged cause of action arose, if at all, in and out of transactions had in Massachusetts and the District of Columbia, and by and between parties then and there resident. Said alleged cause of action arises, if at all, out of the constitution and laws of the United States, and said bill has for its sole object to destroy a grant made by the United States, the patent-office, and the secretary of the interior, to hold the same null and void, and to mutilate and destroy the records of the patent-office. As ancillary thereto, this bill also seeks to prevent the American Bell Telephone Company from bringing suits for the infringement of said patents in the courts of the United States, where alone such suits can be brought. Said alleged cause of action, if it exists, is exclusively of federal origin, cognizance, and jurisdiction.

"The two patents referred to in the bill are No. 174,465, applied for by Alexander Graham Bell, February 14, 1876, and dated March 7, 1876, and No. 186,787, applied for by Alexander Graham Bell, January 15, 1877, and dated January 30, 1877. They were both issued to said Bell as inventor, owner, and patentee. At the time when each of said patents was applied for, and at the time when each was granted and issued, and during all the intervening time, the patent-office of the United States, and the legal official residence of all the officers thereof, and of the secretary of the interior, was at Washington, in the District of Columbia. At all said times, and during the whole of the pendency of said two applications, said Bell was an inhabitant of and resident in the state of Massachusetts, and not of or in the state of Ohio. The whole business of filing said two applications, prosecuting them, obtaining and receiving said patents, and all communications with the patent-office and with the officers thereof, relating to that business, were done, transacted, and had in Massachusetts, or in Washington, and not in any particular in the state of Ohio. Thereafter, by purchase for valuable consideration, and by divers mesne assignments, the entire, sole, and absolute title in and to said patents became vested in the American Bell Telephone Company, in the years 1880 and 1881, and has ever since continued vested in said corporation. All said assignments have been executed and delivered in Massachusetts or Washington, and not in the state of Ohio.

"At the time this bill was filed, and ever since, and long before, the business of the American Bell Telephone Company and the telephone business in Ohio has been conducted and transacted as follows:

"The American Bell Telephone Company, ever since it purchased said patents, and took said assignments thereof, in 1880 and 1881, has always been the sole and exclusive owner of said two Bell patents,—No. 174,465 and No. 186,787; and has never granted or conveyed to any person whatever, and especially has never granted or conveyed to any of the other corporations defendant, any such assignable right or interest in the said patents, or either of them, as is described, referred to, or contemplated by section 4898 of the Revised Statutes of the United States. It has not given or granted to either of the other defendant corporations any right or license whatever to make or sell telephones employing or embodying or embracing any of the inventions patented in and by the said two patents, nor any telephones whatever.

"It and its predecessors, owners of said patents, each for itself determined that it would not itself carry on the telephone business (or any business) in the state of Ohio, (or elsewhere outside of the state of Massachusetts,) but, in lieu thereof, that it would grant licenses under its patents to persons or corporations who might apply therefor to use its patented telephones, and

furnish them to others, for use in the state of Ohio, (and in other states,) and, generally, to carry on all the telephone business therein. Whereupon divers corporations, including the Central Union Telephone Company, the Central District & Printing Telegraph Company, the Cleveland Telephone Company, the City & Suburban Telegraph Company, and the Miami Telephone Company, named as defendants herein, or certain other corporations under whom they, or some of them, claim as successors, (called hereinafter, for convenience, the 'licensee corporations,') desired and sought and obtained licenses to carry on the telephone business in the state of Ohio, at and for the risk and as the business of said licensee corporations. To that end, and long before this suit was brought, the American Bell Telephone Company so arranged with such licensee corporations that, at the commencement of this suit, and ever since, and long before, the latter should carry on and have carried on all such business in the state of Ohio, and the American Bell Telephone Company has not carried on the telephone business in the state of Ohio. Said licensee corporations have carried on that business in their own right, and entirely for their own profit and loss, and not as agents or for account of the American Bell Telephone Company.

"The American Bell Telephone Company has no license contract with the Erie Telephone & Telegraph Company, another corporation named as defendant herein; but it is believed that the latter corporation owns the whole or a major part of the stock of the Cleveland Telephone Company, with whom the American Bell Telephone Company has, and for several years past has had, a license contract and dealings as herein stated.

"The American Bell Telephone Company furnishes to each of said licensee corporations, at its general office or factory in Boston, Massachusetts, and not elsewhere, and as often as requested, telephones embodying said patented inventions, and manufactured by the American Bell Telephone Company. The actual and the legal place of delivery thereof is agreed to be, and in fact is, such general office or factory. The licensee corporation transports them, at its own risk and expense to wherever it wishes to, and lawfully may use them or furnish them to others for use. The licensee corporation, when it sees fit, returns them into the possession of the American Bell Telephone Company, in Massachusetts, and it pays to the American Bell Telephone Company a certain stipulated sum per month in respect of each telephone, reckoned from the time when it receives the same from the American Bell Telephone Company, in Massachusetts, as aforesaid, until it returns the same into the actual possession of the American Bell Telephone Company, as aforesaid, and in some few cases pays certain other sums, but in no case a share or portion of profits. These payments are made, and the accounts respecting the same are settled, at the American Bell Telephone Company's office, in Boston, Massachusetts.

"All the telephones used in the state of Ohio are so furnished, and all the money the American Bell Telephone Company actually receives in respect of, or growing out of, any use of telephones in the state of Ohio, it receives at its general office, in Boston, Massachusetts, from the licensee corporations, and all its accounts therefor are there settled. Each licensee corporation uses said telephones, and furnishes them to others, under and by virtue of, and in the exercise of, its license right so to do, and makes such payments as payments due from it for such license right; and no payments beyond what the licensee corporation has so agreed to make, and in the invariable course of dealing does itself make, are due to or demanded by or received by the American Bell Telephone Company in respect of the use of telephones in the state of Ohio.

"Subject to certain general limitations and regulations restricting the use of telephones so furnished, the right of the licensee corporation is, and its invariable course of business is, to use those telephones itself, or to furnish them to others to be used, within certain counties and portions of the state of Ohio. The licensee corporation constructs, or procures to be constructed, at its own

expense, or at the expense of users to whom it furnishes telephones, all needed lines of wires, and furnishes all batteries and other appliances; the telephones as they have been in fact furnished not being intended to be used, or adapted to be used, without such wires, batteries, and appliances. The licensee corporation selects the customer who is to use such telephones, and fixes the price charged to him; but no matter what price it charges, nor whether it puts the telephones to use, or lets them lie unused in its store-house, it agrees to pay, and does pay, to the American Bell Telephone Company the said stipulated price per month for each instrument.

"The whole of the business connected with the telephones, from the time the licensee corporation received them from the American Bell Telephone Company at its general office or factory, in Boston, Massachusetts, until it returns them to said company, is done at the risk and expense of the licensee corporation, under its direction and control, and by officers and agents appointed and paid by it. The American Bell Telephone Company does not direct or control, and has not the right to direct or control, such business; does not participate in the profits thereof; and is not responsible for, and does not bear the burden of, the losses thereof. It does not select nor dismiss such officers and agents, nor pay them, nor bear any of the burden of payment to them for their salaries. It does not, in fact, by itself, or any officer or agent employed by it, use telephones in the state of Ohio. It has not in fact, and at no time since the filing of this bill nor long before, used, or had a right to use, any telephone existing, nor any telephone line existing, in the state of Ohio, and it has never itself built or operated a telephone line in the state of Ohio. It does not select what individual users shall be furnished with telephones and lines, nor control their selection. It does not solicit business, nor direct who shall be solicited, and has not the power or right to do either. It is not responsible to the individual user for bad service, and does not receive complaints therefor. It does not, and for many years last past it has not, (and it is believed that it never has,) demanded or received any money from any individual user of telephones in the state of Ohio.

"In originally arranging for such conduct of the telephone business in the state of Ohio, (and elsewhere in the United States,) the American Bell Telephone Company sometimes found a licensee corporation disposed to undertake one branch or subdivision of the several branches into which it has been found convenient to divide the telephone business; as, for example, one licensee corporation might undertake the construction and operation of a telephone exchange in one town, another licensee corporation in another town, and another licensee corporation the business of building lines to connect these two exchanges. In such cases, the American Bell Telephone Company stipulated for and reserved, for example, in each exchange license, the right to construct connecting lines, and connect them with the exchange, and other similar rights to make connections and through lines; but it contemplated that such other lines would be built and operated by other licensee corporations, and therefore made such stipulations and reservations in favor of its appointees or assigns as well as itself, and provided that, when its appointees or assigns undertook such work, they should become *pro tanto* the contracting parties, and the American Bell Telephone Company should not be responsible for their misfeasance or non-feasance. And further, for the same purpose, it established such regulations that different licensee corporations needing to interchange business or connect lines should do so in a convenient manner, without the power of either to obstruct the same by mere self-will; but it has not otherwise undertaken to regulate such business. In fact, it has not itself, in the state of Ohio, undertaken or carried on such business, but the same has been entirely undertaken and carried on and performed by its various licensee corporations. In many cases one licensee corporation has successively undertaken to extend its business as aforesaid into the other branches and connecting exchanges or lines.

"The more effectively to carry out said course of dealing, and to enable it to enforce its rights and protect its interests as licensor, not itself carrying on the telephone business in the state of Ohio, and to do this without destroying or dismembering the telephone system, to the serious inconvenience of the individual users, in case of default or failure on the part of the licensee corporation, the American Bell Telephone Company retains the technical legal title to said telephones; and has the right, in case of default, or if said course of dealing is not duly carried out, to take possession of lines and instruments temporarily or permanently, and thereafter to withdraw them from operation, or cause them to be operated by itself or through other licensees, or pursue various remedies at law and in equity to collect from each individual user what he would otherwise have paid to the licensee corporation, or otherwise to step into the shoes of the licensee corporation, and then, retaining its stipulated royalty or license fee, to account for the overplus to the licensee corporation, or otherwise, according to law; but no such steps have ever in fact been taken in the state of Ohio.

"The license contracts to and with the licensee corporations, in respect of instruments to be used on private lines, contemplated that the whole business of selecting and soliciting customers for private lines, of communicating with them, demanding and collecting all payments from them, and doing all business in connection with them, should be performed by the licensee corporation as its own business, at its own discretion, at its own expense, for its own profit or loss, and at its own risk, and in its own right; and that (except in case of a cancellation of said contract for default) the American Bell Telephone Company should neither demand nor receive, in respect of instruments used on private lines, any payment whatever, except the monthly royalties to be paid to it at its office, in Boston, Massachusetts, by the licensee corporation, as already stated, and whether the instruments furnished to the licensee corporation were by it furnished to an individual user or not; and the business, in fact, has been and is so conducted.

"The license contract also contemplated, but solely as a convenient means for enabling the parties to exercise the rights arising thereunder, that, in respect of each set of instruments for such private line, a special license should also be furnished by the American Bell Telephone Company to the licensee corporation, and by it countersigned and granted over to such individual users as it might so select. So far as such special licenses have been furnished, they have been furnished by the American Bell Telephone Company to its licensee corporation in bulk, with the blanks unfilled, and the particular telephones not designated therein, to be used by the licensee corporation as its property, and of right, and not as an agent, nor liable to be revoked at pleasure by the American Bell Telephone Company, even before they were furnished to individual users by the licensee corporation.

"As a matter of fact, the licensee corporations have not, with any considerable degree of accuracy, returned to the American Telephone Company duplicates of such special licenses when used, nor reported the names of the private-line users to whom such special licenses have been furnished; but the course of dealing at the present time is, and for a period long before the beginning of this suit has been, for the licensee corporation to receive all its telephones from the American Bill Telephone Company at Boston, Massachusetts, and to pay the stipulated royalties thereon under a general classification thereof, according to their intended uses; but without discrimination as to the particular customers to whom they might be furnished, and without being precluded from using, for private lines, telephones ordered for exchanges, or *vice versa*, when holding separate license contracts for both these purposes.

"These, and all other provisions of detail in the license contracts, and in the dealings between the American Bell Telephone Company and licensee corporations, are intended and used to provide for and secure the licensee cor-

porations in carrying on its business, and enjoying its rights as licensee, and to enable the American Bell Telephone Company to enjoy, protect, and enforce its rights in case the licensee corporation fails to carry on its business, and make its payments as contemplated.

"The American Bell Telephone Company owns stock in four of the licensee corporations named as defendants herein. In some of them it acquired some stock when the licenses were made. In others of them it has acquired it by subsequent purchase at the market price, as any other purchaser might do. It has not a majority of the stock in any of them, except two, and in those it holds a bare majority, and acquired enough to give it a majority by purchase at the market price.

"The American Bell Telephone Company has not agreed to supply all counsel, and maintain all suits, against or affecting the licensee corporations. It has in two cases, but not in others, agreed, as in good conscience a manufacturer and furnisher of patented machinery may well agree, that, in consideration of the license fees paid to it, it will defend all suits brought against its licensee corporations on the ground that the telephones furnished by it unlawfully infringe patents owned by others.

"Samples of the standard forms of contract which the American Bell Telephone Company has been accustomed to make with the licensee corporations aforesaid are hereunto annexed. They are designated 'Form 109 D,' 'Form 113 D,' 'Form 116 C,' and 'Form 251 B.'

"The Central Union Telephone Company, the Erie Telephone & Telegraph Company, the Central District & Printing Telegraph Company, the Cleveland Telephone Company, the City & Suburban Telegraph Company, the Miami Telephone Company, and the Buckeye Telephone Company, named as defendants in this cause, were not at the date of filing the bill of complaint herein, nor at the several dates of alleged service of the writs of subpœna issued herein, nor theretofore, the associates or copartners, nor was either or any of them at those dates, nor has either or any of them ever, at any time, been an associate or copartner of the American Bell Telephone Company, in any manner or for any purpose; nor have they, nor has either or any of them, in the state of Ohio, or elsewhere, formed with the American Bell Telephone Company any association, copartnership, or joint-stock company which divides the profits of any business whatsoever between them, or either or any of them, and the American Bell Telephone Company; nor has any part of the profits of the telephone business carried on by any local association, copartnership, or joint-stock company, nor any part of the profits of the licensee corporations, been set apart weekly, (or at any other period,) and accounted for by such local company, nor collected by agents of the American Bell Telephone Company who visit any local company for that purpose, (and no such visits are made,) or otherwise paid to the American Bell Telephone Company; nor is it entitled to receive any such share or division.

"All of which matters and things this defendant avers to be true, and is ready to maintain and prove. Wherefore this defendant prays the judgment of this honorable court whether it ought to be required to appear in accordance with any writ of subpœna issued in the said suit."

Along with its plea and motion the American Bell Telephone Company exhibits samples of the standard forms of the contracts "for exchanges," for "extraterritorial connecting lines," "branch lines," and for "private lines and other purposes," which it has usually made with the licensee or local corporation. These contracts are too lengthy to be here inserted, but will be referred to in considering and passing upon the questions raised by the plea in abatement, of which they form a part.

The complainants *set down this plea in abatement for argument,* and also moved to strike said defendant's motion from the files, because in controverting the truth of the returns it presents an issue of fact which cannot, in the regular and orderly mode of judicial proceedings, be raised and tried on motion and by *ex parte* affidavits; because the statement of facts accompanying and supporting its motion set up and rely upon matters *dehors* the return, which should properly be raised by plea in abatement; and because the plea in abatement, embodying precisely the same extrinsic facts relied on to sustain the motion, overrules the motion.

Two grounds of objection are taken to the marshal's return by the motion of the American Bell Telephone Company: The *first* that *"said return is untrue in fact;"* and, *secondly,* that *"it is insufficient in law,"*—one presenting an issue of fact, and the other raising a question of law upon the face of the return. The defendant's plea in abatement, and its motion to set aside the marshal's return or quash the service, because it *"is untrue in fact,"* are identical, and present precisely the same issue, and on the same state of facts. Both the plea in abatement and the first ground of said motion seek to controvert the *truth* of the return, as to matters of fact stated therein, on grounds that do not appear upon the face of the return; both dispute the truth of the return on precisely the same extrinsic facts. Where the invalidity, irregularity, or defect in the service of the writ *appears* upon the *face* of the return, a motion to quash the service or abate the writ is the proper mode of bringing the matter to the attention of the court; but where the objection does *not appear* upon the *face* of the papers, the better rule of practice, where it is sought to question or dispute the facts stated therein, is to do so by plea in abatement, on which an issue may be regularly taken and tried. *Halsey* v. *Hurd*, 6 McLean, 14; *Rubel* v. *Beaver Falls Cutlery Co.*, 22 Fed. Rep. 282, 283.

It is not denied that objections to the regularity or validity of the service, not appearing on the face of the return, are sometimes taken by motion to dismiss or set aside the service. Thus, in *Harkness* v. *Hyde*, 98 U. S. 476, the illegality of the service, which did not appear upon the face of the return, was presented by motion to dismiss the *suit*, which was treated by the court as a motion to set aside the service, and was sustained. But the general rule of practice is to raise such issues of fact by plea in abatement; and in this case, as the defendant's motion and plea in abatement present identically the same issue, and on the same state of facts, so far as relates to the truth of the return, it would seem to be the better practice, and most correct course, to have that question considered and determined on the plea rather than the motion, which is an application for summary relief based upon *ex parte* affidavits. The court will accordingly overrule so much of defendant's motion as seeks to dispute or controvert the *truth* of the *facts* stated in the marshal's return, but will leave said motion to stand so far as it raises the question of the legal

sufficiency of the service on the face of the return, and to be considered with the plea in abatement.

The questions, then, presented for the consideration and decision of the court are whether the returns on their face show a good and legal service upon the defendant the American Bell Telephone Company; and, if so, whether, under the facts set up by the plea in abatement, it can be held that said defendant is carrying on its business in Ohio, and that the local or licensee corporations, named as co-defendants, are its agents, or in such relation to it that service upon them is such service upon it as to bring it *personally* before the court, and subject to its jurisdiction.

Do the returns upon their face show a legal and valid service on the American Bell Telephone Company, such as will require it to appear and make defense herein, or suffer the consequences of default?

They recite, in parenthesis, that said company is *doing business* and *found* within the Southern and Northern districts of Ohio, and that it was served by reading or delivering a certified copy of the subpœna to the president or vice-president of the local corporation, with the statement or recital that such local corporation was "the partner or agent" of the said American Bell Telephone Company within the state of Ohio.

Looking to the averments of the bill in relation to the business done in Ohio by the American Bell Telephone Company, it is doubtful whether they can be considered as charging anything more than that said company was a copartner, associate, or part owner with the local or licensee corporations in the *business* carried on by the latter in the state. The bill alleges that said American Bell Telephone Company is present and found, and has property and does business, in the state of Ohio, under and by virtue of said Bell patents, "*and by the means and in the manner hereinafter set forth.*" It then proceeds to show "*the means* and the *manner*" in which said company is so present and found, and conducting the business of telephony under its said patents, in said district; that it is the *owner* of all the telephone instruments used in the state of Ohio; that the local corporations are the *owners* of the wires, poles, etc., used in connection with the business, and which they *contribute* as *their shares*, respectively, of the capital of the business; that the American Bell Telephone Company "furnishes" the franchise and exclusive right of said patents and the telephone instruments, together with a contract stipulation with each of said local companies that said American Bell Telephone Company will also supply counsel, and maintain suits, and do all things to make the business an exclusive and close monopoly, without charge or burden to the local company or corporation; that the local association, copartnership, or joint-stock company thus formed *divides the profits* of the business with the American Bell Telephone Company on terms agreed upon between the parties; and that the

share of the American Bell Telephone Company is set apart weekly, and accounted for by said local company, and is collected by *agents* of the American Bell Telephone Company, who visit said local company for that purpose, or otherwise paid to said American Bell Telephone Company. After thus showing, especially and distinctly, that "the means and manner" in which the business of telephony is carried on, created and established the relation of *copartners* between the American Bell Telephone Company and the local corporations, the bill proceeds to state the great extent of the business throughout the United States; and then, avers that said local or subcompanies "are part owners and copartners, agents, and representatives of said American Bell Telephone Company within each of the divisions and, districts of Ohio, and that said American Bell Telephone Company is *entitled to and has an interest in all and singular the property, rights, and business of the other said defendants.*"

This interest in "the property, rights, and business" of the local corporations the Bell Telephone Company has, as previously set forth, by virtue of its copartnership relation to them. Following this, the bill states "that the American Bell Telephone Company does business in each of said divisions and districts *by the sale and grant of licenses to use said patents;* by *renting* or *lease* of said telephone instruments; by sharing in the earnings and profits of each of said local companies; by holding stock in the same; by having an interest in the rights, property, and business thereof; by supporting and maintaining each of said companies in litigation; by the employment of officers, agents, and servants in each of said divisions and districts; and by divers other means and devices."

These averments, which supplement the allegation of a copartnership between the American Bell Telephone Company and the local corporations, may be regarded either as a general summary of what was previously set forth, or be treated and considered as charging that the American Bell Telephone Company, in addition to its partnership connection with the local corporations, was itself engaged in carrying on business in the state by the sale and grant of licenses to use said patents; by the renting or lease of telephone instruments; by the holding of stock in the local companies; and by the employment of officers, agents, and servants in each division of the state. Without this latter construction, there is no clear or distinct allegation that the American Bell Telephone Company is *itself* transacting business in the state. Other allegations of the bill only show and charge that the American Bell Telephone Company and the local corporations are copartners in the business of telephony carried on by the latter, or that it "is entitled to and has an interest in all and singular the property, rights, and business of the other said defendants."

It is not alleged that the local companies are the "officers, agents, and servants" employed by the American Bell Telephone Company

in each district of the state; nor that the sale of licenses to use its patents, or the renting of its telephone instruments, is done by the American Bell Telephone Company through or by means of the local corporations as its agents. The only sale or grant of licenses to use said patents, and the only renting or lease of telephone instruments set forth in the bill, are made *to the local corporations*. *They* certainly do not, as the officers and agents of the American Bell Telephone Company, sell licenses or rent telephone instruments to themselves. This would be a manifest absurdity. It will be proper, therefore, in considering the question as to the sufficiency or validity of the service, to treat the bill as charging that the American Bell Telephone Company is carrying on business in Ohio, both as copartner for the local corporations, and separately for itself, by the employment of agents, officers, and servants of its own, in the selling and granting of licenses to use its patents, in the renting or leasing of its telephone instruments, and in the ownership of stock in the local corporations, or otherwise. Reading the returns in the light of these jurisdictional averments of the bill, do the recitals therein contained, that each of the local corporations on whose chief officer service was made was "the partner and agent" of the American Bell Telephone Company, constitute, "*prima facie*," a legal and valid service on the latter? It is clear that if the statements made in the returns, that the local corporations served were "the partners and agents" of the American Bell Telephone Company, are to be construed as meaning that the latter companies were "agents," by reason of the copartnership relation charged in the bill, the service would not be sufficient to bring the American Bell Telephone Company, as a non-resident corporation and partner, *personally* before the court. The bill claims that the alleged copartnership embraces, not the patents sought to be canceled and annulled, but only the business of telephony transacted in Ohio. The local companies, as the copartners of the Bell Telephone Company in carrying on the business of telephony in this state, if that relation can legally exist between such corporations, would be the *agents* and representatives of the *latter* as to the copartnership transactions and affairs, but not further or otherwise, in the absence of express arrangement, which is not alleged. In respect to that copartnership business, the interest therein of the non-resident partner may be subject to the local jurisdiction, if the copartnership is properly served with a process in conformity with the statutes of the state. It is, however, well settled that the non-resident partner cannot be brought personally before even the local courts, or be subjected to judgment *in personam*, by service upon the resident partners. This court certainly could not recognize or act upon any such service, as against the non-resident. The Ohio statute relating to non-resident partners provides (Rev. St. § 5011) that "a partnership formed for the purpose of carrying on a trade or business in this state, or holding property therein, may sue or be sued by the usual or ordinary

name which it has assumed, or by which it is known." The service may be made (Rev. St. § 5042) "by leaving a copy at its usual place of doing business," and the judgment rendered against the partnership by the firm name "shall operate only upon the partnership property." This statute, being special, must be strictly pursued, in order to bind either the partnership or its property. *Smith* v. *Hoover*, 39 Ohio St. 249. It cannot serve to support the present returns, which do not conform to its provisions and requirements, or to give jurisdiction *in personam* to this court over the American Bell Telephone Company. The authorities clearly establish these propositions. *D'Arcy* v. *Ketchum*, 11 How. 165; *Hall* v. *Lanning*, 91 U. S. 160; *Pennoyer* v. *Neff*, 95 U. S. 714; *Renaud* v. *Abbott*, 116 U. S. 277; S. C. 6 Sup. Ct. Rep. 1194.

But suits in equity in the federal courts are regulated, not by the state statutes, but by the judiciary acts, and the rules of equity practice adopted for and governing said courts. Equity rule 13 provides "the service of all subpoenas shall be by delivery of a copy thereof, by the officers serving the same, to the defendant personally, or by leaving a copy thereof at the dwelling-house or usual place of abode of each defendant, with some adult person who is a member or resident in the family." The court can acquire jurisdiction over parties in equity suits only by the service of process within the district in compliance with the requirements of this rule, or by their voluntary appearance. The requirements of the rule are not complied with by the returns in question, if the statements therein made as to the relation of the local corporations to the American Bell Telephone Company mean nothing more than a *partnership agency*.

But how stands the question on the assumption that the bill impliedly, if not expressly, charges that the American Bell Telephone Company is doing business in Ohio *other* than that carried on by the local or licensee corporations, as its copartners,—such as the sale and grant of licenses to use its patents, the renting or lease of its telephone instruments, and the employment of officers, agents, and servants in each district of the state. The officers and agents so employed, or the "agents" who (as stated in the bill) visit the local companies at regular periods to collect its share of the profits arising from the partnership business, would be more properly the representatives of the American Bell Telephone Company, for the purpose of the service of process, than the local copartner corporations in whose "rights, property, and business" it had only an interest. But no such service is shown, although both the subpoenas and the returns recite that the American Bell Telephone Company is doing business and found here, not merely as a copartner, but personally. Under such circumstances, a return stating that service was made upon an officer of a local corporation, with the recital, in parenthesis, that such local company was "the partner and agent" of the American Bell Telephone Company, fails to show affirmatively the facts required to constitute

a valid service, either under the judiciary acts, the rules of practice governing this court, or under the statute of Ohio relating to service on foreign corporations, which provides (Rev. St. § 5046) that "when the defendant is a foreign corporation, having a *managing agent* in this state, the service may be upon such agent." It is nowhere alleged in the bill that the local corporations, on whom or whose officers service was had, were the "managing agent" or "agents" of said Bell Telephone Company. No presumptions are to be indulged in favor of such a return, so as to give the court jurisdiction over a non-resident corporation. *Alexandria* v. *Fairfax,* 95 U. S. 780; *Grace* v. *American Cent. Ins. Co.,* 109 U. S. 283; S. C. 3 Sup. Ct. Rep. 207. The returns in question are furthermore irregular, and open to the objection that the marshal has not confined himself to a statement of what he did in executing the subpœnas, but states conclusions of law and fact apart from what was done, in reciting that the local corporations were partners and agents of the American Bell Telephone Company.

Our conclusion, therefore, is that, under the allegations of the bill, the statements of the subpœnas, and the recitals of the returns, no valid or legal personal or constructive service on the American Bell Telephone Company is affirmatively shown, such as will require it to appear and make defense herein, or suffer the consequences of a default; and that said company's motion to quash said service for defects of insufficiency in law or illegality appearing on the face of the returns should be sustained.

But this conclusion as to the insufficiency of the returns upon their face will avail but little in finally disposing of the main question touching the jurisdiction of the court over the American Bell Telephone Company, as said returns may be amended upon proper motion, or new subpœnas could issue, if the facts disclosed in the plea of abatement and exhibits thereto justify such an amendment or the issuance of further process. It becomes necessary, therefore, to consider the questions raised and presented by the plea in abatement. Under the thirty-third rule of equity practice, the complainants were at liberty either to take issue on this plea or to "set it down for argument." They have chosen to take the latter course, thereby precluding the defendant from an opportunity of establishing its plea by proof, and thereby admitting, as absolutely true, all the statements of the plea, however inconsistent with or contradictory of the allegations of the bill, or the statements and recitals in the returns. The truth of the plea being thus admitted by setting it down for argument, all facts material and pertinent to the issue raised by it stand, and are to be treated, as though established by proof, and, under the present rule of practice, are to avail the defendant "so far as in law and equity they ought to avail it."

The questions presented by the plea of abatement for the determination of the court are whether, assuming the facts stated in the

plea and exhibits thereto to be true, the American Bell Telephone Company was carrying on business in the state of Ohio at the commencement of this suit, and at the date of the alleged service of the subpœnas herein; and, if so, whether all or any of the local corporations were its agent or agents, upon whom service of process could properly be made, so as to bring said American Bell Telephone Company personally before the court, or compel it to appear and defend the suit.

These are mainly questions of fact, but in their consideration the distinguished counsel for the government and the Bell Telephone Company have, in able and elaborate arguments, discussed the general subject of suits against foreign corporations, and the present state of the law in relation thereto.

For the complainants it is insisted that under the judiciary acts (Rev. St. § 739) and the act of March 3, 1875, a corporation is to be found and is amenable to suit wherever it is doing business, independently of the existence of any local law providing for suits against it; that the mere fact of carrying on its business in a state other than that of its creation will enable it to be found there, irrespective of any law or statute of such state authorizing suit against it, or against foreign corporations generally, by service upon their agent. No case yet decided by the supreme court, either directly or in principle, sustains this broad proposition. The supreme court has not yet gone to the extent of holding that a corporation can be found, under the judiciary acts, for personal suit, beyond the limits of the state creating or adopting it *eo nomine*, irrespective of the local law. In every decision of the supreme court asserting or maintaining the jurisdiction of either the federal or state courts over corporations created or located outside of the territorial limits of the state or district in which suit was brought against them, commencing with *Lafayette Ins. Co.* v. *French*, 18 How. 404, which made the first exception to the rule of the common law that a corporation could not migrate, had no legal existence, and could not be found, for the purpose of suit, beyond the limits of the sovereignty creating it, there has existed a local statute expressly or impliedly providing for or authorizing such suit as a condition of the corporations doing business therein, together with the further fact that the foreign corporation actually carried on its business, or some substantial part thereof, in such state by and through the instrumentality of agents appointed by itself. Except where the law of the state in which it carries on business and is sued imposes, expressly or by implication, a liability to suit there as a condition of its doing business in the state, a foreign corporation cannot be found, for the purpose of a suit *in personam*, outside of the jurisdiction or sovereignty creating it.

Without undertaking to review the authorities on the subject of a corporation's liability to suit in a state or district other than that of its creation, we think the decisions of the supreme court have settled

and established the proposition that, in the absence of a voluntary appearance, three conditions must concur or co-exist in order to give the federal courts jurisdiction *in personam* over a corporation created without the territorial limits of the state in which the court is held, viz.: (1) It must appear as a matter of fact that the corporation is carrying on its business in such foreign state or district; (2) that such business is transacted or managed by some agent or officer appointed by and representing the corporation in such state; and (3) the existence of some local law making such corporation, or foreign corporations generally, amenable to suit there as a condition, express or implied, of doing business in the state. When the local law, expressly or by comity, permits foreign corporations to do business in the state; when it also provides for suit against them in a reasonable and proper manner, and within the just limits of the state's power and authority; and when a foreign corporation thereafter enters the state, and transacts its corporate business by means of resident agents coming within the terms of the local statute,—it may be *found*, and is liable to suit there in either the state or federal courts, by service of process on such agent. *Lafayette Ins. Co.* v. *French*, 18 How. 404; *Railroad Co.* v. *Harris*, 12 Wall. 65; *Ex parte Schollenberger*, 96 U. S. 369; *Railroad Co.* v. *Koontz*, 104 U. S. 5; *St. Clair* v. *Cox*, 106 U. S. 350; S. C. 1 Sup. Ct. Rep. 354; *New England Mut. Life Ins. Co.* v. *Woodworth*, 111 U. S. 138; S. C. 4 Sup. Ct. Rep. 364; *Boston Electric Co.* v. *Electric Gas-Lighting Co.*, 23 Fed. Rep. 839. The underlying principle on which these decisions rest is that the state may impose conditions, not in conflict with the laws and constitution of the United States, on the transaction of business in its territory by corporations chartered elsewhere, or exclude them altogether, or revoke permission or license already given. Corporations engaged in interstate commerce do not, of course, come within such state authority, and no restrictive conditions can be imposed upon such corporations.

The judiciary acts (Rev. St. § 739) and act of March 3, 1875, providing that no civil suit or action shall be brought against any person outside of the district in which he resides or may be found at the time of the service of process, do not affect the general jurisdiction of this court, but merely confer a personal privilege or exemption upon the defendant which can be waived and is waived by a foreign corporation, not only by a voluntary appearance to the suit, but by doing business in a state imposing the condition or liability to suit there by service of process on its agent. It cannot be held sufficient to give this court jurisdiction *in personam* over a foreign corporation that it has property rights, however extensive, within the district, or that it has pecuniary interests, however valuable, in business managed and conducted by others. It must itself be carrying on business in its own right, on its own responsibility, and for its own ac-

count, and through or by means of its own agents, officers, or representatives, in order to bring it within the operation of the laws of a state other than that in which it is incorporated, making it amenable to suit there as a condition of its doing business in such state.

Under the authorities and principles stated, the American Bell Telephone Company, as a Massachusetts corporation, can only be found and be liable to suit within the territorial limits of this court, within the meaning of the federal law or judiciary acts, by virtue of the laws of Ohio relating to it or foreign corporations generally doing business in the state. Except as to insurance companies, the statutes of Ohio impose no express terms or conditions upon foreign corporations coming into the state, and exercising their corporate functions. By a long-standing and well-recognized comity, all foreign corporations, other than insurance companies, are allowed to carry on their corporate business, and exercise their franchises, here without being required to designate an officer or agent on whom service of process shall be made, or to give any express consent to be found or sued here. The Civil Code of Procedure of the state provides, (Rev. St. § 5044:) "A summons against a corporation may be served upon the president, mayor, chairman, or president of the board of directors or trustees, or other chief officer; or, if its chief officer be not found in the county, upon its cashier, treasurer, secretary, clerk, or managing agent," etc.; omitting the special provisions about foreign insurance companies. Section 5046 provides: "When the defendant is a foreign corporation, having a managing agent in this state, the service [of process] may be upon such agent." This section, in order to bring it within the just limits of the state's power and jurisdiction, must necessarily be construed as embracing or including within its operation *only* such foreign corporations as *carry on business* in the state. It cannot possibly have any extraterritorial effect, so as to bring within its operation, and bind or give jurisdiction over, a foreign corporation, *in personam*, which was not carrying on business within its limits, even though it might have a "managing agent" residing in the state. The true meaning and construction or proper limitation of this foreign corporation statute must therefore be that suit may be instituted against a foreign corporation doing business in the state by the service of process on its "managing agent." The foreign corporation, to come within the operation of the statute, must carry on its own business and have a "managing agent" in the state. This was the construction placed by the supreme court upon a similar statute of Michigan in *St. Clair* v. *Cox*, 106 U. S. 357; S. C. 1 Sup. Ct. Rep. 354; Mr. Justice FIELD, in stating the opinion of the court, saying:

"We do not, however, understand the law as authorizing the service of a copy of the writ, as a summons, upon an agent of a foreign corporation, unless the corporation be engaged in business in the state, and the agent be ap-

pointed to act there. We so construe the words, 'agent of such corporation within the state.' "

When a foreign corporation carries on its corporate business, or some substantial part thereof, in this state, by means of an agent or representative appointed to act here, and having the charge and management of such business, it impliedly assents to be found and sued here in the person of such agent. Doing business in a state imposing such condition or liability to suit as this Ohio statute is treated by the authorities as an agreement or consent on the part of the foreign corporation to be "found" here, within the meaning of the federal judiciary acts, for the purpose of suit, and in the mode designated, if just and reasonable. If, therefore, the American Bell Telephone Company is carrying on its business in Ohio by a resident "managing agent," or was so doing at the commencement of this suit, it has voluntarily brought itself within the operation of the Ohio statute, and may be found here, and service had upon it, in the person of such managing agent. The defendant has urged that such suits must be confined or limited to causes of action originating in the state, and coming within the operation of its laws, and have cited several authorities to that effect. This would perhaps be a very proper limitation or restriction, but it can hardly be said to be established by the decisions. In *Railroad Co.* v. *Harris,* 12 Wall. 65, the cause of action originated outside of the District of Columbia; and in *Mohr & Mohr Distilling Co.* v. *Insurance Cos.,* 12 Fed. Rep. 474, 475, Mr. Justice MATTHEWS expresses the opinion that this foreign corporation statute of Ohio would cover all actions of a transitory character, wherever they may have originated. But, in the view we take of the present case, it is not necessary to express any opinion on this position.

Now, applying the foregoing propositions and principles to the facts set up by the plea of abatement, can it be maintained, either that the American Bell Telephone Company is carrying on its business in Ohio, or that it has a "managing agent" here on whom service of process can be made, so as to bring it personally before the court?

The material facts set forth in the plea, and which positively and directly contradict the statements and recitals of the returns, are that the American Bell Telephone Company was not carrying on business in the state of Ohio at the time of the service of the process herein; that it has no office or place of business in Ohio; that it had no officer or agent in the state representing it or its business at the date of said service and return; that neither of the local corporations on whom the process was served as its "partner and agent" bore towards it any such relation; that said local companies were in fact neither its copartners nor its agents, but merely licensees and lessees of its telephone instruments, with the right to use the same in certain defined territorial limits; that it is neither a citizen nor resident of Ohio, nor found within the limits of said state; that its legal

and actual "*situs*" and place of business is in the state of Massachusetts; that it has never used or operated a telephone, or built, constructed, or owned a telephone line, in said state; that it has never had in Ohio a telephone or telephones which it either actually operated, or had the right to operate; that it has no right of present possession or enjoyment of any telephone or telephone line in said state; that it has no agent or officer in connection with said local or licensee corporations; that it has never appointed, and has no right to appoint or remove, any officer, agent, employe, or servant of said local companies; that said local corporations alone carry on the business of telephony in Ohio for their own account and profit, and as their own business; that it does not share in their profits, or depend upon their profits, for its pay for the use of its telephone instruments; that all telephones used in Ohio are delivered by it to the local corporations at Boston, Massachusetts, and nowhere else; that all the money which the American Bell Telephone Company receives from the local companies it receives at its office in Boston; that it has neither demanded nor collected in Ohio money for the use of telephones; that it receives only what the local corporations under their license contracts agreed to pay by way of rent and royalty; that said rent and royalty so agreed to be paid by the local companies are based mainly on the number of telephones they receive; that in a few cases where this would not be a proper guide said rents and royalties are based upon the amount of business done, measured, not by net tolls, but by gross receipts; that the liability of the local company for the payment of said rental and royalty commences with the delivery and receipt of the telephones at Boston, and continues until the instruments are returned, or, if destroyed, their loss or destruction satisfactorily accounted for; and that said license contracts were all made and entered into at Boston, Massachusetts, and not elsewhere. The exact relations of the American Bell Telephone Company and the local corporations are set out in great detail, both in the plea and in the contracts exhibited therewith. These contracts are drawn with great precision, accurately defining the rights and liabilities of the parties thereto, and, both by their express terms and clear intent, state the relation between the American Bell Telephone Company and the local corporations to be that of licenser and lessor on the one side, and licensee and lessee on the other. For its protection, the American Bell Telephone Company has, by the terms and provisions of these contracts, reserved important rights and powers, which in certain contingencies it may exercise, but which, as the plea distinctly avers, have never been actually exercised by it. The plea sets forth what has actually been done under the contracts.

Whether the American Bell Telephone Company is carrying on business in Ohio must be determined by what it has done, or is doing, rather than by what it may hereafter do, in the event the local companies should make default in complying with the provisions of the

contracts.   The right reserved to take possession and carry on the business of telephony in Ohio, on the contingency of the local corporations' failure to observe and perform the terms and stipulations of the license contracts, certainly does not constitute a present carrying on of business by the American Bell Telephone Company, such as would bring it within the provisions even of the Ohio statutes. When the Bell Company exercises its reserved rights and powers under the contracts, and takes possession of the telephones, lines, etc., in Ohio, and operates the same through agents or officers of its own, it may then with some propriety be said to carry on its business in the state, so as to be amenable to suit here under the Ohio statute relating to suits against foreign corporations, but not before.   The only thing presenting the appearance of an agency relation between the American Bell Telephone Company and the local or license corporations is found in that provision of the "private-line" contracts which requires the rents and royalties of telephones used on such private lines to be reserved to the licenser.   But, when this provision is considered in connection with other stipulations of the contract, it will be found that these rents and royalties are transferred and assigned, even before created, to the licensee corporations, which have the right to collect and appropriate them to their own use so long as the contracts are complied with on their part.   The provision was only intended to guard against the contingency of default by the licensee corporations, and to protect the American Bell Telephone Company against loss and embarrassment in the enforcement of its rights, upon the failure of the local companies to perform and observe the terms of the contracts.   With the delivery of the telephone instruments at Boston to the licensee corporation it became entitled, by the terms of the contract, to all the rents and royalties that might arise from private-line customers, and acquired the right to collect the same as its own, for a year in advance, and to continue to do so, from year to year, while the contracts were in force, with no liability to account therefor to the American Bell Telephone Company.   The local corporations purchased these rents and royalties as a part of the rights they acquired under their license contracts.   They alone had the right to collect them, and apply them to their own use, so long as they observed and performed the stipulations of the contracts. The local or licensee corporations, in fact, alone make such collections of the private-line customers.   The American Bell Telephone Company has never had the right to collect, and has, in fact, never collected, any of said rents and royalties.

The contract provides that said second party, (the licensee corporations,) "so long as it makes, or causes to be made, the payments herein stipulated, and keeps all the terms thereof, may collect the rentals and royalties from the customers thereunder for a period in advance, not exceeding one year.   Upon any default on its part which shall continue for more than 30 days after written notice thereof, the

licenser may, by written notice to it, or by publication in some newspaper in ———, revoke said authority to collect and revoke and cancel all the right and interest of every kind thereunder of the second party; and may in its name, or the name of the second party, if it shall deem such course more convenient, collect all rentals for telephones and lines furnished thereunder, or in accordance therewith, whether then due or thereafter to become due, and take possession and remove all telephones furnished thereunder, subject to such rights as such customers may lawfully have under licenses to be granted by it, in accordance with the terms thereof. *For all rentals and royalties so collected by the licenser, and which accrued before the licenser gave notice as aforesaid, it shall account to the second party, first deducting all that may be due from said second party to it, and expenses incident thereto.*"

The contingent right thus reserved to the licenser for its protection, in the event of default on the part of the licensee corporation in making stipulated payments, and which, as averred in the plea, it has never, in fact, exercised, or had any occasion to assert, cannot be construed either as the carrying on of business in Ohio by the American Bell Telephone Company, or as constituting the licensee corporation one of its "managing agents." While the contract between the Bell Telephone Company and the local corporations is in force, the latter receives these private-line rentals and royalties as their own, and not as agents of the former. But, whatever may be the construction of this private-line contract, it is distinctly disclosed by the plea that the parties thereto have not dealt with these rents and royalties, or transacted the business, on the footing of any agency relation. The plea clearly sets forth that the business in respect to private-line customers has in fact been and is conducted on the theory that the rentals and royalties arising from such customers belong to the local companies, as their purchased right, while the contracts are in force. The stipulations of the contracts are entirely consistent with the relation of licenser and licensee, even as to these private-line telephones; and the rents and royalties reserved thereon, and the actual course of dealing between the parties in respect thereto, will not harmonize with any other relation. An agency relation may in some cases arise or be established as a legal result from the facts, although contrary to the avowed intention of the parties; but no such rule can have any application to cases where it is sought to reach foreign corporations by service on a local agent. Such agent must be one actually appointed by and representing the corporation as a matter of fact, not one created by construction or implication, contrary to the intention of the parties. The present contracts leave no room to doubt that the local or licensee corporation acquired the right to collect and appropriate the rents and royalties in question until it made default, and the contract was canceled. Upon the cancellation of the contract in the mode provided, the rights and interests of the

licensee were to be terminated, and then, but not before, the Bell Telephone Company was entitled to resume and recover the rights it had parted with.

While the contracts are subsisting, the local or licensee corporation acts exclusively for itself, and for its own benefit, and at its own risk and expense, in collecting said rents and royalties.  When the contracts are canceled the rights of the Bell Telephone Company reattach, so that no agency relation, in fact or in law, exists or was intended between said parties during the continuance of said contracts. In purchasing the right to collect and appropriate to its own use, for one year in advance, (and from year to year while it observes and performs the stipulations of the contract,) the rents and royalties to be paid by the user or customer of private-line telephones, the local corporations cannot properly be regarded as acting for or as representing the Bell Telephone Company in regard to such matters, or as establishing the fact that the latter is carrying on business in Ohio. It is disclosed in the plea that but few of these private-line licenses, with rents and royalties reserved to the Bell Company, were ever, in fact, issued or used.  Under the facts stated in the plea, it is impossible to see in what way the American Bell Telephone Company has invoked either the comity of this state, or placed itself or its business within the jurisdiction or operation of its laws, so as to be found here. All that has so far been done by it in respect to the making and execution of the license contracts was actually done and transacted in Boston, Massachusetts.  The existence of these contracts, with the rights conferred upon the licensee or lessee, and the rights and powers, however large, reserved to the licensor or lessor, does not constitute the carrying on of business in Ohio by the American Bell Telephone Company.  The authorities do not define with exactness what is meant by the terms "carrying on business," but none go to the extent of holding that such transactions as the American Bell Telephone Company has had with the licensee corporations of Ohio, at its place of business, in Boston, and not elsewhere, will constitute the carrying on the business by it in Ohio.  Assuming the truth of the facts set out in the plea, a judgment against the American Bell Company in the state court, based upon such service as herein presented, would not be enforceable or have any validity elsewhere.

The terms "managing agent" indicate the character of the business the foreign corporation must be engaged in transacting in order to be liable to suit here.  They clearly imply the carrying on of the corporate business, or some substantial part thereof, by means of an agent who manages and conducts the same, within the limits of the state, for and on account of the foreign corporation.  The business done must rise to the dignity and importance implied by the phrase "managing agent" in order to come within the operation of the statute.  But we cannot understand how a local corporation, as a dis-

tinct and legal entity, in carrying on and conducting the business of telephony in Ohio, for which it was chartered and organized, can be regarded, either in fact or in law, as the "managing agent" of a foreign corporation in respect to *that same business.*  How can the transaction of its *own business* by the local corporation make it the "managing agent" of another and a foreign corporation having separate and distinct corporate functions?  This would be an anomaly in the law. If such relation could exist under such circumstances, its actual existence is positively and distinctly denied by the plea, and is neither disclosed by the contracts nor alleged in the bill.  If a customer of the local corporation should sustain damage by reason of some neglect, misconduct, or default on its part in the reception and transmission of messages, or otherwise, would it be asserted, or if asserted could it be maintained, that such customer could, under the contracts in question, proceed directly against the American Bell Telephone Company as the real principal, and hold it liable for the injury sustained? Clearly not.  The Bell Telephone Company cannot, therefore, be held or considered as carrying on the business of telephony conducted by the local corporation, and that is the only business done.

Furnishing the means necessary to enable the licensee companies to transact the business of telephony in Ohio, either upon a fixed rental and royalty on the telephone instruments used, or a percentage of the gross receipts of the business, does not constitute the carrying on of that business by the American Bell Telephone Company, or make the licensee companies its "managing agents," so as to render it amenable to suit here.  The decisions of several states whose statutes employ similar terms to this foreign corporation act of Ohio uniformly construe the words "managing agent" as designating some principal officer of the corporation who, either generally or in respect to some substantial part of the corporate business, has a controlling authority in the particular locality.  Thus, in *Upper Mississippi Transp. Co.* v. *Whitaker,* 16 Wis. 233, it was held that the captain of a steam-boat was not a "managing agent" of the transportation company which owned the boat.  The court says: "This statute relates to an agent having a general supervision over the affairs of the corporation." See, also, *Lake Shore & M. S. R. Co.* v. *Hunt,* 39 Mich. 470.   In *Reddington* v. *Mariposa L. & M. Co.,* 19 Hun, 405, the court say: "It is quite clear that the legislature attached importance to the term 'managing agent,' and employed it to distinguish a person who should be invested with general power, involving the exercise of judgment and discretion, from an ordinary agent and employe who acted in an inferior capacity."  In *Flynn* v. *Hudson River R. Co.,* 6 How. Pr. 308, the court held that a "managing agent" contemplated by the statute was one having "the same general supervision and control of the general interests of the corporation that are usually associated with the office of cashier or secretary."   The Ohio process act (section 5044,

Rev. St.) classes "managing agent" with "cashier," "secretary," and "treasurer," and next after "president" or "chief officer" of the corporation.

Neither the averments of the bill, nor the facts set up in the plea or disclosed in the contracts, establish any such relation between the Bell Telephone Company and the local corporations as will constitute the latter the "managing agents" of the former, under the authorities, or the clear import of the terms. But it is insisted by counsel for the government that the American Bell Telephone Company, in acquiring the ownership and possession of the franchises and grant described in the letters patent issued to Alexander Graham Bell, has thereby ceased to be a state corporation, and has become *national* in its character, and is to be treated precisely as though it were a corporation organized under the laws of the United States, with authority to do business in any part of the Union; that, as a patent-holding corporation, it is "domesticated," and is to be "found" wherever its patent is used. This position cannot be sustained. The franchise which the patent grants consists altogether in the right to exclude any one from making, using, and vending the thing patented without permission of the patentee or owner of the patent. *Bloomer* v. *Mc-Quewan,* 14 How. 549. It is true that the privilege so granted extends to the utmost limits of the United States, and is wholly independent of the powers and jurisdiction of the several states. *Patterson* v. *Kentucky,* 97 U. S. 501; *Webber* v. *Virginia,* 103 U. S. 347; *Ager* v. *Murray,* 105 U. S. 126. But in permitting others to *use* the patented thing, the owner of the patent, whether a corporation or a private person, is not exercising any federal right, privilege, or franchise.

The right of the patent owner to permit or license the use of the invention is not the creature of the federal franchise or statute, but of the common law; and, in exercising this common-law right of licensing others to use its patent, the corporation owner is no more *nationalized* than a private owner would be under the same circumstances. The fact that a patent-holding corporation licenses others to use its patent in a particular state has no more effect and operation in *domesticating* it within such state than the same act on the part of a private owner would render him a citizen and resident of every state in which his patent might be used. The franchise right of the patent-holding corporation in no way serves to establish the fact that such corporation is carrying on its business, and is to be found wherever its patent is used. A franchise cannot be distinguished from other property, and property held by a corporation stands upon the same footing with that held by an individual. *West River Bridge Co.* v. *Dix,* 6 How. 507. But, aside from this, it is well settled that neither the patent law, nor the privileges secured to patentees thereunder, in any way enlarge, modify, or change the judiciary acts in respect to either the territorial jurisdiction of the federal

courts, or the proper service of process upon defendants. *Chaffee* v. *Hayward*, 20 How. 208; *Saddler* v. *Hudson*, 2 Curt. 6; *Ager* v. *Murray*, 105 U. S. 126; *Butterworth* v. *Hill*, 114 U. S. 131; S. C. 5 Sup. Ct. Rep. '796.

The character of the American Bell Telephone Company's incorporeal rights or franchises, as the owners of said letters patent, can in no way affect the questions involved, or determine whether it is carrying on its business in Ohio by a managing agent or agents, or whether it has been properly served with process, so as to bring it personally before the court. The position that the American Bell Telephone Company is *domesticated* wherever its telephone instruments are used, even under license, is only restated by counsel for the government in another form when it is said that the American Bell Telephone Company is "carrying on the business of *owning* telephones in Ohio." But it will hardly do to say that the ownership of property in the state is the doing of business here, within the meaning and intent of the law, so as to make the owner personally present. It is undoubtedly true that, in respect to the particular property so owned and located within its limits, the state has the authority to proceed against it "*in rem*" for the purpose of taxation, or to subject it to the payment of valid claims and demands against the foreign owner. It cannot, however, serve to bring the *person* of such owner within its jurisdiction, whether that person be a private individual or a patent-holding corporation. But in the present case the retention of the title to the telephone instruments, which are leased or rented at Boston, to be used in Ohio by the local or licensee corporation, with the reservation of the right to cancel such lease and resume possession in certain contingencies, is hardly to be considered a *present ownership* of the instruments, no default having occurred on the part of the licensee which would authorize the lessor to terminate the lease. All that can be said of the lessor's title, under such circumstances, is that it is a *suspended or deferred* ownership, subject to the particular right and estate of the lessee while the lease is in force. Aside from this, would any court, state or federal, undertake to assume jurisdiction over the American Bell Telephone Company personally, by finding a lot of its telephone instruments stored in some warehouse, or with a commission merchant of Cincinnati? Hardly. And yet the presence of such instruments here would be just as much "the carrying on the business of owning telephones in Ohio" as the finding of such instruments in the possession of a lessee. Owning property is one thing; using such property in connection with business carried on by the owner, or others to whom he grants the right to use it, is another and quite a different thing. For one person to supply the means to another to do business with or on is not the doing of that business by the former. The jurisdiction of this court cannot be sustained on any such proposition as this, and it need not longer be dwelt upon.

It is next claimed by counsel for the complainants that the American Bell Telephone Company has entered its appearance in this suit. This claim is based upon that portion of the plea which, after reciting what is sought to be accomplished by the bill, proceeds to set forth that said alleged cause of action, if it exist, is exclusively of federal origin, cognizance, and jurisdiction; that the whole business of filing the applications, prosecuting them, obtaining and receiving said patents, and all communications with the patent-office, and with all officers thereof, relating to that business, were done, transacted, and had in Washington city, or in Massachusetts, and not in any particular in the state of Ohio; and that said cause of action arose, if at all, in the District of Columbia and state of Massachusetts, under the laws of the United States, and not under any law or statute of the state of Ohio. It is said that these facts are set up by said defendant to show that this court, sitting in Ohio, has no jurisdiction over the subject-matter of the suit; that this portion of the plea is practically a demurrer to the jurisdiction of the court over the controversy, and is equivalent to a motion to dismiss for want of equity, which, in *Jones* v. *Andrews,* 10 Wall. 332, was held to constitute an appearance.

This position cannot be maintained. The defendant, in these statements and recitals of the plea, was simply negativing the facts that the cause of action or subject-matter of the suit had its origin in the state of Ohio, on the theory that the jurisdiction of this court over said defendant, if it existed under the Ohio statute, was limited to cases and causes of action arising from or under its business transactions in this state, as was held in *Grover* v. *American Exp. Co.,* 11 Fed. Rep. 386; *Smith* v. *Mutual Life Ins. Co.,* 14 Allen, 336; and *Sawyer* v. *North American Life Ins. Co.,* 46 Vt. 697. The correctness or incorrectness of this theory does not affect the character or purpose of the plea, or make it a defense to the merits of the suit. The plea begins by saying: "This defendant, appearing specially and solely to object to the jurisdiction of this court, pleads to the jurisdiction of this court over it, and for cause of plea says that this defendant is not compellable to appear in response to said writs, and does not accept or waive service thereof;" and prays in conclusion, not for the dismissal of the suit, but as follows: "Wherefore this defendant prays the judgment of this honorable court whether it ought to be required to appear in accordance with any writ of subpœna issued in said suit." This plea cannot properly be construed as raising or presenting an issue upon the merits of the bill, such as will operate as an appearance on the part of said defendant. In *Harkness* v. *Hyde,* 98 U. S. 476, a motion was made to dismiss the action, but was argued as a motion to set aside the service, and was so treated by the court. Mr. Justice FIELD, in stating the opinion of the court in that case, says: "Illegality in a proceeding by which jurisdiction is to be obtained is in no case waived by the appearance of the defendant for the purpose of calling the attention of the court to such irregularity. It is only

when he pleads to the merits in the first instance, without insisting upon the illegality, that the objection is deemed to be waived."

The various matters relied on to show that the American Bell Telephone Company is to be found in Ohio, and subject to the jurisdiction of this court,—such as its ownership of the telephone instruments used by the licensee corporations; the ownership of stock in one or more of the local companies; the rights and powers reserved to it of resuming possession of its telephone instruments, and taking control of the telephone business, in the event of default on the part of the licensee corporations in complying with the provisions of the license contracts; the sharing in the gross receipts of certain portions of the business done; the reservation of rents and royalties; the right to make changes; and the restrictions and limitations imposed upon the licensee companies,—neither singly nor in the aggregate establish the two *essential facts* necessary to bring the American Bell Telephone Company within the power and jurisdiction of this court, viz., that said corporation is now, or was at the commencement of this suit, carrying on its business in the state of Ohio, and that it had a "managing agent" or agents representing it here.    The truth of the plea being assumed, the only relation existing between the American Bell Telephone Company and the local corporations is really and technically that of lessor and lessee, licenser and licensee; the Bell Telephone Company being merely the lessor of the telephone instruments, and the licenser of the right to use the patent embodied therein, on certain terms, as to rents and royalties and otherwise, agreed upon between the parties, the contracts being entered into, not in Ohio, but at Boston, Massachusetts.

Our conclusion, therefore, is that both the motion of the American Bell Telephone Company, so far as it raises objection to the legal sufficiency of the returns herein, upon their face, and its plea in abatement to the jurisdiction of the court over it, be sustained; that said returns be quashed, and the alleged service on said defendant be abated.    The plea being sustained, and availing the American Bell Telephone Company "so far as in law and equity it ought to avail," it disposes of the case so far as said corporation is concerned. The bill is accordingly dismissed as to said American Bell Telephone Company for want of jurisdiction over it, but without prejudice to the complainants.    Whether the case can proceed without said corporation and Alexander Graham Bell being before the court as material and essential parties it is not necessary now to decide.

Judges WELKER and SAGE, who sat with the circuit judge on the hearing of said motion and plea in abatement, concur in the reasoning and conclusion of this opinion.