## INDIAN REFINING CO v BAKER

Ohio Appeals, 4th Dist, Brown Co
Decided May 22, 1931

Nichols, Speidel & Nichols, Batavia, for The Indian Refining Co.

J. M. Collins and R. B. Bagby, Georgetown, for Baker.

MAUCK, PJ.

The evidence showed that the refining company had without any authority erected a gasoline pump on the east side of Main street in the Village of Aberdeen, about six feet from the sidewalk, and that about two feet south of the pump had placed a pipe that projected several inches from the ground, which was used to supply the tank beneath the pump with gasoline. This made a case of primary negligence against the defendant. The pipe over which the plaintiff stumbled was a nuisance. It is argued by the defendant that as gasoline stations furnish power by which motor ve-

hicles are propelled that some analogy between a gasoline station in a street and hitching posts and carriage blocks should be drawn. The analogy appears to us to be so remote as to be non-existent, and we are aware of no authority that ever justified placing a carriage block or a hitching post in a village street at a distance of six feet from the sidewalk.

The real issue in the case was whether or not the plaintiff was guilty of contributory negligence in the manner in which he used the street in question at the time he sustained the injuries complained of.

The plaintiff was proceeding from his home north and west of the corner of Main Street and Second Street, had come to the northwest corner of those two streets when he proceeded in a diagonal direction from the sidewalk to the center of Main Street, and thence in a southerly direction a short distance until he arrived at a point near the gasoline pump, where he turned east to reach the sidewalk. This was about six o'clock in the morning. It was dark. There had been a heavy rain. The gutters were filled with water and in broken places along the street puddles had collected. There was no sufficient sidewalk on the west side of Main Street south of Second. There was a good sidewalk on the east side. There is some evidence that for the plaintiff to cross from the northwest corner of Main and Second to the northeast corner, in order to reach the east sidewalk, he would have had to have gone through some water, or if he would have continued straight across Second Street and then had undertaken to cross to the east side that another puddle of water would have intercepted his course in his attempt to get to the east side of the sidewalk on the southeast corner of the junction. There is further evidence that if he had continued down Main Street in the center of the street, which of course was higher and therefore drier than the sides, he would have encountered a number of puddles in the broken street. In passing from the middle of the street to the sidewalk at the point where he did he selected a dry and apparently convenient place because at that point the flowing water was conducted under the raised place in the street where the pump stood.

Upon the issue raised by this state of facts the defendant submitted a number of special instructions to be given before argument. Some of these were refused and the refusal to give them is urged as prejudicial error. The first special instruction requested and refused was to the effect that the burden of proof rested upon the plaintiff

"to prove the allegations of negligence set out in his petition, and this he must do by a preponderance of all the evidence in the case. If he fails to prove such allegations of negligence by a preponderance of the evidence then your verdict must be for the defendants."

This charge was, of course, sound. It was not refused because it was thought to be an incorrect statement of the law but because the same question was deemed by the court to be adequately covered by the second special instruction, which was given. That second special charge contained this language:

"Therefore, if the plaintiff has failed to prove by a preponderance of the evidence that his injuries were caused by the negligence of the defendants as charged in the petition, and that such negligence was the proximate cause of plaintiff's injuries, then your verdict must be for the defendants even though you find that the plaintiff did receive bodily injuries."

The second special instruction thus covered all that was in the first special instruction and more, and when the trial court gave the second it was warranted in refusing to give the first as well.

Complaint was also made upon the refusal of the trial court to give the defendants' special charge four. This charge was to the effect that if the jury found that the plaintiff

"departed from the sidewalk provided by the Village of Aberdeen for pedestrians he assumed the risk of what might happen to him, and if you find from the evidence that the accident would not have happened if the plaintiff, George Baker, had stayed upon the sidewalk and had crossed Main Street at a regular sidewalk crossing, and that plaintiff's act in crossing diagonally from one side of the street to the other, thereby passing over the driveway where the fill pipe was located, was a proximate cause of the accident your verdict must be for the defendants."

As it is admitted that the plaintiff did depart from the sidewalk, and as it is clear that the accident would not have happened if he had stayed upon the sidewalk and that his act in crossing over the place where he did cross over was a proximate cause of the accident, this requested instruction was in substance a request for a directed verdict. If the defendant was entitled to this special charge it was entitled to a judgment

at the conclusion of plaintiff's testimony. The defendant claims that this instruction is authorized and required by the **City of Dayton v Taylor, 62 Oh St 11.** The language of the requested instruction is practically identical with the language approved by the Supreme Court in the Taylor case. In the Taylor case, however, the injured pedestrian had departed from the sidewalk

"without any necessity therefor so far as appears in the record, and solely for his own pleasure and convenience."

That is not the record in this case. Here the plaintiff undertakes to show that to avoid pools of water and gutters running full he took to the high place in the center of the street because the sidewalks were not reasonably accessible. The trial court took the view that the question whether his failure to use the sidewalks was or was not negligence, was a question for the jury and not, as in the Taylor case, a question of law, and the trial court was in our judgment right.

The ninth special charge was in this language:

"I charge you, Ladies and Gentlemen of the Jury, if you find from the evidence that the plaintiff, George Baker, was endeavoring to cross diagonally over Main Street in a heedless and careless fashion, and while so travelling struck the fill pipe and was thereby injured, then he was guilty of contributory negligence as a matter of law and your verdict should be for the defendants."

This instruction was erroneous for two reasons. It does not define or lay down any rule by which the jury can determine what is "a heedless and careless fashion," and requires a verdict for the defendants whether the action sought to be described is or is not the proximate cause of the plaintiff's injuries.

The eleventh special charge refused by the court was this:

"I charge you, Ladies and Gentlemen of the Jury, if you find from the evidence in this case that the Village of Aberdeen provided suitable and unobstructed cross-walks and sidewalks for pedestrians on Main Street in said village, it was the duty of the plaintiff in proceeding along Main Street to the River Ferry to use such cross-walks and sidewalks."

This instruction is based upon the provsiions of §6310-34 GC, which reads as follows:

"Where cross-walks or cinder paths parallel the public road or highway, pedestrians shall not walk in, along or upon the vehicular travelled portion of such public road or highway, except at crossing and cross-walks, except in cases where crossings or cross-walks are an unreasonable distance apart."

This section was indicated as part of an act

"providing for the enacting and codification of laws relating to rules of the road, traffic regulations and the regulation of the operation of motor vehicles,"

and we have serious doubts whether its provisions can be invoked for the protection of one who is occupying the highway not for transportation but for commercial purposes, and in so occupying it creates a nuisance. However that may be, if the plaintiff was violating the provisions of this section when he was in the middle of the street and proceeding south, he was not violating it when he was injured for he had then left

"the vehicular travelled portion of such public road or highway,"

and had entered upon the raised area by the gasoline pump, from which the defendant had excluded vehicular traffic. The court was justified, therefore, in refusing this instruction.

The general charge to the jury, supplemented by the special instructions given at the request of the defendant, was adequate and correct.

Another question of minor importance is raised by the plaintiff in error in that the trial court permitted the plaintiff to explain what he claimed to have actually said in a conversation with Mr. and Mrs. Kimball. Mr. and Mrs. Kimball were called as witnesses by the defendant to impeach the plaintiff, who had been asked upon cross examination if he had made a certain statement to Mr. and Mrs. Kimball regarding the cause of his injury. He had denied making the statement and Mr. and Mrs. Kimball had contradicted him. In rebuttal he returned to the stand and attempted an explanation. The Kimballs were more than impeaching witnesses. The defendant had a right to put them on the stand and adduce from them the testimony, given as a matter of right, tending to show that the plaintiff's injuries proceeded from some cause other than that laid in the petition. While it was in form an impeachment it

was competent testimony on the merits of the case and would have been received as competent if the plaintiff had never been inquired of regarding it when on the stand. The testimony having a tendency, therefore, to do more than impeach the plaintiff, and having a tendency to defeat his entire claim, he had a right to go on the stand in rebuttal and give his version of the matter to which they had testified. The question is at most inconsequential.

The trial was a fair one. The verdict is large but is justified by the evidence. The judgment is affirmed.

MIDDLETON and BLOSSER, JJ, concur.