## SPRUNG, Admr. v E. I. DUPONT DE NEMOURS & CO.

Ohio Appeals, 2nd Dist, Franklin Co.

No. 2969.   Decided May 27, 1939

Power & Barton, Columbus, for plaintiff-appellee.

Vorys, Sater, Seymour & Pease,. Columbus. and Wilbur E. Benoy, Columbus, for defendant-appellant.

(GUERNSEY, J. (3rd Dist.), sitting by designation).

## OPINION

By HORNBECK, PJ.

This is an appeal on questions of law from a judgment for plaintiff against defendant in the sum of $30,000.00 with costs. The action was for damages for the wrongful death of plaintiff's decedent claimed to have been caused by the negligence of an employee of the defendant company in the operation of a tractor and semi-trailer. The specifications of negligence were:

(1) Operation of tractor and trailer at a high and dangerous rate of speed, to-wit, forty miles per hour.

(2) Failure to keep said tractor and trailer under control.

(3) Failure to give any signal or warning of the approach of the tractor and trailer.

(4) Failure and neglect to keep a proper lookout.

(5) Failure of defendant to exercise ordinary care when it saw or should have seen that the road upon which the tractor and trailer was moving was covered with ice.

The defense after admission of its corporate capacity and that plaintiff's decedent was walking in a southerly direction on Telegraph Road at a point about 200 feet south of Pasadena Boulevard and that plaintiff's decedent was involved in an accident with a certain tractor truck at the time and place set out in the petition, generally denies all other allegations of the petition and for a second defense alleges that plaintiff's decedent's death was due directly and proximately to his own carelessness and negligence. The reply was a general denial of the sec-

ond defense of the answer.

The defendant is a foreign corporation. The return on the summons shows personal service upon H. J. McCreevey, Managing Agent of the defendant company.

Defendant moved to quash service of summons which in the first instance was sustained and thereafter on reconsideration was overruled. Motions were made by defendant for directed verdict at the conclusion of plaintiff's case and at the end of the whole case, which were overruled. Motions for new trial and for judgment notwithstanding the verdict were also overruled and judgment entered on the verdict of the jury.

The errors assigned are:

(1) Overruling defendant's motion to quash service of summons.

(2) The overruling of defendant's motion for final judgment upon pleadings and the record notwithstanding the verdict.

(3) Overruling defendant's motion for new trial.

(4) Overruling defendant's motion for directed verdict at the close of the plaintiff's evidence and renewed at the close of all the evidence.

(5) Admitting testimony offered by plaintiff.

(6) Refusing defendant's request No. 11 for instruction before argument.

(7) Error in the general charge.

(8) Refusal to comply with written request of the jury, after the jury had retired to deliberate, and during the course of their deliberations, for further information on the law of the case, in violation of §11420-6, GC.

(9) Verdict against the manifest weight of the evidence.

(10) Verdict was excessive; damages appearing to have been given under the influence of passion and prejudice.

(11) Other errors of law appearing in the record.

MOTION TO QUASH SERVICE.

The first error assigned is the overruling of the motion of defendant to quash service of summons.

Defendant was a foreign corporation and service was sought to be made upon said corporation under §11290 GC, which provides:

"When the defendant is a foreign corporation, having a managing agent in this state, the service may be upon such agent."

The court in the first instance sustained a motion to quash service of summons, but upon application for rehearing reconsidered the former action and overruled the motion. The return of service of the Sheriff recites personal service upon H. J. McCreevy, the managing agent of the within named the E. I. du Pont de Nemours & Company, * * *.

It was the claim of the defendant that Howard E. MacCleary (evidently the correct name of the H. J. McCreevy set out in the sheriff's return), was not as of the date of the service of process upon him the managing agent of the defendant company within the meaning of §11290 GC. The claim was supported by affidavits of Mr. MacCleary, William Richter, General Manager of the defendant company, and G. A. Biesecker, Western Sales Manager for defendant company, all of which were to effect that MacCleary was but an employee and not a managing agent of defendant company. In behalf of the plaintiff an affidavit of Irma Conley was introduced wherein she stated that on or about the 8th day of April, 1937, she inquired at the office of the E. I. du Pont de Nemours & Company, 191 South High Street, Columbus, Ohio, as to the name of the manager of that store and was advised by a young lady employee of that store that H. E. MacCleary was the manager of the store.

Mr. MacCleary was also sworn and testified respecting the nature of his employment with the defendant company. From this testimony and from the affidavits it appears that the company operates two stores in Columbus from which paints and like products of the company are sold. Defendant has designated an agent with the Secretary

of State upon whom service may be made on said company.

It further appears that both Mr. Richter and Mr. Biesecker, stationed outside of Ohio, were superior officers of Mr. MacCleary. It is also quite evident from Mr. MacCleary's testimony that it was his purpose, though we do not say untruthfully, to minimize any managerial authority on his part for the defendant. Much that he says is entirely incompatible with any theory that he had any authority respecting the operation of the store over and beyond that of a mere employee.

On the other hand, parts of his statement raised and permitted the inference that he did exercise certain managerial responsibilities incident to the handling and disposal of the products of the defendant company from the store at which he was located. Among other things he said:

"In the du Pont Company we have quite a large organization, and in the paint division we have six different branches known as trade sales, industrial sales, automotive sales, petroleum sales and railroad sales. Now, in these six different divisions I am in the one called trade sales, which merely has to do with the selling of du Pont house paints, material paints, etc., just one little branch of the paint division, and here in Columbus we must have some one to distribute those paints for the du Pont Company, and I am here for the purpose of seeing that those paints are sold and distributed."

The term "managing agent" as employed in §11290, GC, is synonymous with managing local agent. If Mr. MacCleary was not the managing local agent then it is obvious that there was no one with any such authority at the store of the defendant company on South High Street, Columbus, although there were a number of employees there and it must have been a place from which considerable business was conducted. It is more probable than otherwise that there was a managing

agent at defendant Company's store, and it does not appear that the Judge who passed upon the motion to quash drew any unwarranted inference from the evidence before him in holding that MacCleary was the managing agent of defendant company.

It has been consistently held in Ohio that the tendency of legislation and the policy of the law is to facilitate the obtaining of service upon foreign corporations. **R. R. Company v Transportation Company, 32 Oh St 116; Israel v Machinery Co., 25 N. P. N. S. 507.**

In **Railway v Newman, 16 Oh Ap 156,** it is said that,

"The principal respresentative of a foreign corporation in the locality where it does business is its managing agent for the purpose of serving summons."

If the evidence supported the finding that MacCleary was the manager of some substantial part of the corporation, then he answered the description of managing agent as appearing in §11290 GC. **Goode v Druggists' Assn., 3 O. L. R. 600;** United States v Telephone Co., 29 Fed. 17; **Hurd v Ransom & Company, 13 Oh Ap 135.**

In Beach v Turbine Co., 243 Fed. 706, it was held that a person sent from a foreign corporation's plant to install turbine pumps for the waterworks department of a city, with authority to hire whatever help was needed in setting up, installing and connecting them, was its "managing agent", upon whom due process might properly be served. Here the agent had more comprehensive authority, especially as to the right to hire employees than in the instant case, but this element was but one of the duties which the agent was authorized to perform upon which the court predicated its determination that he was a managing agent.

At page 709, discussing the opinion in Toledo Computing Scale Co. v Computing Scale Co., 142 Fed. 919, Judge Westenhaver said, quoting Judge Severens in the Computing Scale Company case,

"The Ohio Supreme Court evidently intended to give a liberal interpretation to the statute to facilitate the obtaining of jurisdiction over foreign corporations doing business in the state, and held that one who chiefly represented the corporation in a locality where it was doing business was its managing agent there, and indeed a construction of this statute which restricted the meaning to one who was a general manager would very much limit its utility."

Before proceeding to the consideration of the other errors assigned it will be necessary to set out some of the pertinent facts developed in the trial of the cause.

## FACTS

Plaintiff's decedent, Ralph S. Sprung, was at the time of his death a married man, 41 years of age. He left a widow, Gladys S. Sprung, aged 40, and a son, Ralph Sprung, 17 years of age, who in a few months would have graduated from a Columbus high school. Mr. Sprung at the time of his death and for fifteen years prior thereto had been manager of the Mailing Division of the Agricultural Extension Service of State University at a salary of $130.00 per month and earned in addition thereto $35.00 per month. He left no estate and his wife and son were solely dependent upon him.

On December 2, 1936, and prior thereto the son of plaintiff's decedent had been in the employ of a Mr. Leach, driving new Dodge automobiles from the factory at Detroit to Columbus. The father had at times expressed a desire to go to Detroit with the son for the purpose of seeing the automobile factory and to drive a car back. On the return trip which plaintiff's decedent was making when he was killed he was one of a party of four, each member of which was driving a Dodge car. They left Detroit in the afternoon between one and three o'clock and moved southwardly on the Telegraph Road or the Dixie Highway. As long as they were in Michigan the road was dry and in good condition. When they came over into Ohio, the highway was found to be well covered with ice and very slippery. They had proceeded to a place about two and one-half miles south of the Michigan-Ohio line and when they came near to a thoroughfare intersecting Telegraph Road known as Pasadena Avenue, noticed flares to the south and about 75 feet north of Sunset Blvd., another intersecting thoroughfare. Upon noting the flares Norman Willis, one of the party, drove his car to the curb on the west or his right side of the highway and parked parallel with the curb at a point about 20 feet to the north of an Essex car which had been in a wreck and was parked with the front wheels thereof extending into the highway. Plaintiff's decedent parked his car immediately back of the Willis car at and parallel to the curb. These cars were parked about halfway between Sunset and Pasadena Boulevards.

It is testified by Willis that he and Sprung left their cars, walked down Telegraph Road close to the curb, Sprung farthermost into the street and Willis alongside him nearer the curb, passed around the Essex, then moved in close to the curb and had walked about 20 feet to the south when they were struck by the cab of defendant's truck. There is some dispute in the evidence, largely raised by the testimony of Frank Kujawa, the driver of defendant's truck. Willis fixes his distance from the west curb at two feet and says that Sprung was immediately beside him.

There was a sidewalk alongside Telegraph Road about twelve feet to the west of the curb of said road. Willis and the witness, Kohne, were both permitted to say that they did not see the sidewalk, although Kohne's care was upon and over the curb when he alighted from it. It appears that Telegraph Road is 50 feet wide. There were cars parked along the west side of Telegraph Road and to the north of the Essex. It appears that the flares were put up because of a wrecked truck at a bypass under a railroad about four squares south of Pasadena Blvd.

It was the claim of plaintiff that her decedent was moving in the highway for the purpose of determining the nature of the impediment in the thoroughfare which occasioned the placing of the flares and for the purpose of learning whether or not it would be safe, in view of the condition of the thoroughfare, to move on to and through the danger signals. The tractor or truck and trailer, which struck plaintiff's decedent was a combination of heavy vehicles weighing approximately ten tons, and it appears that the tractor had gone into a skid some 300 feet to the north of the place where it struck Sprung, and that it continued for a distance of more than 200 feet after it had hit him; that in its movement it also collided with the Essex and struck another car which probably materially slackened the tractor's speed. The testimony as to the speed of the tractor varied from 10 miles an hour as fixed by Kujawa, driver of the tractor, to 35 miles an hour. One witness said it was moving faster than 25 miles per hour at all times from the place where it began to skid until after it had struck plaintiff's decedent.

## SECOND, THIRD, FOURTH, FIFTH AND SIXTH ASSIGNMENTS OF ERROR

The second error assigned is particularly directed to the refusal of the court to enter judgment nothwithstanding the verdict. At the same time we may consider the general claim of the contributory negligence of plaintiff's decedent, the further contention that as a matter of law his negligence was the proximate cause of his injury and death and also errors in the charge and in refusal to charge, which further assignments are numbered 3, 4, 5 and 6.

The second assignment also includes the failure of the court to instruct a verdict for the defendant at the conclusion of the plaintiff's case and at the conclusion of the whole case.

Much time and attention has been given and many cases have been cited on the question of the application of §6310-34 GC to the facts in this case.

It provides,

"Where **cross-walks or cinder paths parallel** the public road or **highway, pedestrians** shall not walk in, along or upon the **vehicular traveled portion of such public road** or highway, except at crossings or **cross-walks** except in cases where **crossings** or **cross-walks** are an unreasonable distance apart." **(Emphasis ours).**

We have emphasized certain words in the Section to give application to some of the arguments presented.

It appears that the intersections between Pasadena Blvd. and Sunset Blvd. were 300 feet apart. Counsel for the defendant therefrom make the assumption that as a matter of law the crossings were not an unreasonable distance apart. A sidewalk 12 feet west of the curb of Telegraph Road paralleled the road and extended from Pasadena Blvd. south to and beyond Sunset Blvd. Some evidence was permitted over objection to the effect that from the place where the plaintiff's decedent and Norman Willis alighted from their cars they could not see the sidewalk. A witness, Robert D. Kohne, the owner of the Essex car who was some 75 to 100 feet away from the place where plaintiff's decedent was struck was permitted to testify without objection or exception to the fact that he did not see the sidewalk although he was off the highway and west of the curb thereof. Upon the testimony of Willis, at no time except when he and Sprung moved around the parked Essex was he more than 2½ feet from the west curb and he says that Sprung was immediately beside him and to his east or further into the highway.

It is the theory of the plaintiff and there is testimony to support it that because of the excessive speed of the driver of defendant's truck and his failure to exercise ordinary care in the particulars set out in the petition, his outfit was caused to go into a skid which began at a distance of 200 to 300 feet north of Pasadena Blvd. and continued until it reached a place where

Sprung and Willis were walking alongside the curb. At this point the semi-trailer swung to the right and struck both of them. The truck and trailer continued their movement for a distance of 100 feet or more, struck a car owned by a Mr. May, forced it to the curb and then continued for further distance of some 75 feet when it came to rest. Another witness for the plaintiff, Mr. Kohne, gives a version of the happening which requires the inference that the front of the outfit or the truck struck plaintiff's decedent and Willis.

The driver of the truck testifies that he was suddenly confronted by the presence of Sprung and Willis at a point about the middle of the highway and north of the parked Essex car; that he sounded his horn and was compelled to swerve his truck to the left and over and beyond the center of the highway; that he then was required to immediately move back to his right side of the highway because of an oncoming northbound automobile; that the men made a movement to get away from the truck and back toward the curb and that he did not know that he had struck them. Thus there was presented to the trial judge two theories, one of which, if true, disclosed a clear violation of §6310-34 GC, in that the men were moving across the highway between intersections. The other that Sprung and Willis were not out into the highway and were moving along in a space in the highway which was within the distance which a car would project if parked along the west curb. It is undisputed that the Essex extended into the highway the distance of the width of its front wheels, the hood of the automobile and the bumper on the front thereof; that north of it were parked some 6 or 8 cars, most of which were parked lengthwise and extended into the highway the width of the cars. In this situation the projection of these cars would be considerably more than three feet.

At the conclusion of the case defendant's counsel requested the court to give thirteen special charges before argu-ment. The court gave all except numbers six and eleven. Of those given number twelve was as follows:

"You are instructed that the defendant could rightfully assume the observance of the law and the exercise of ordinary care by others; and action by the defendant in accordance with such assumption, in the absence of notice or knowledge to the contrary, is not negligence. The defendant had a right to presume, in the absence of notice or knowledge to the contrary, that Mr. Sprung would comply with §6310-34 GC which provides,

'Where crosswalks or cinder paths parallel the public road or highway, pedestrians shall not walk in, along or upon the vehicular traveled portion of such public road or highway, except at crossing or crosswalks, except in case where crossings or crosswalks are an unreasonable distance apart.'

If you find from the evidence that Mr. Sprung was violating this statute and such violation contributed directly in the slightest degree to cause his death, then plaintiff can not recover and your verdict must be for the defendant."

Number thirteen as given:

"Sec. 6310-36, GC provides that: 'Pedestrians shall not step into or upon a public road or highway without looking in both directions to see what is approaching.' Members of the jury, if you find from the evidence that Mr. Sprung violated this statute and such violation directly contributed in the slightest degree to cause his death, plaintiff cannot recover and your verdict must be in the favor of the defendant."

The court instructed the jury in substantially the same terms, as employed in the above special charges, numbers twelve and thirteen, in the general charge.

We have considered **Skinner v Penna Rd. Co. 127 Oh St 69; Morris v Bloomgren, 127 Oh St 147; Gumley v Cowman,**

129 Oh St 36; Swoboda v Brown, 129 Oh St 512; Universal Concrete Pipe Co. v Bassett, 130 Oh St 567; Scott v Hygrade Food Products Co., 131 Oh St 225; Sinko v Miller, 133 Oh St 345, upon the question of proximate cause as a matter of law and, of course, are familiar with Schell v DuBois, 94 Oh St 93; Heidle v Baldwin, 118 Oh St 375; Candy Co. v Kling, 121 Oh St 362 determining in what cases the violation of a statute is negligence per se. Upon the construction and application of §6310-34 to varying circumstances and facts we have again read Novack, Admr. v Aleski, 6 Abs 453; Bunting v Younglass, 5 Abs 291; Ferry v Brookmire, 7 Abs 201; Ohlemacher v Bennett, 7 Abs 296; Evans v Brugaman, 7 Abs 538; Indian Refining Co. v Baker, 10 Abs 212; Alociewicz v Cuccorise, 16 Abs 325; Werner v Rowley, 16 Abs 522; DeLisa v Scott, 16 Abs 108, 47 Oh Ap 505; Clark v Stewart, 126 Oh St 264.

We first give attention to the question raised by the motion of defendant for a directed verdict at the conclusion of plaintiff's case, at the end of the whole case and for judgment veredicto non obstante. We had heretofore given considerable attention to this question and were prepared to consider and discuss cases relevant and pertinent thereto. Inasmuch as our Supreme Court on the 24th of May handed down an opinion in case No. 27180, Harry J. Smith v Zone Cab Company, et al, which in our judgment is determinative of the question now under consideration, we are content to rely upon this adjudication. The syllabus is as follows:

"In a personal injury action by a pedestrian against an operator of a motor vehicle, where it appears from the evidence that the pedestrian is guilty of negligence per se by reason of violating an ordinance of a municipality and it further appears that there is evidence tending to show negligence on the part of the operator of the motor vehicle and direct causal connection between such operator's negligence and pedestrian's injury, the issue still remains as to whether pedestrian's negligence directly contributed to produce his own injury and is one for the jury provided the state of record is such that reasonable minds may differ on the conclusions to be drawn from the evidence on that issue."

The facts in the cited case upon which the syllabus is predicated are enough like the facts developed in the instant case to make the law which we have quoted in the syllabus applicable and controlling.

We next consider the claimed error in the failure of the Court to instruct the jury in the general charge, that, if it found §6310-34 or 6310-36 was violated such violation was a proximate cause of plaintiff's decedent's injuries and death.

Had the trial judge refused to charge §6310-34 and §6310-36 we would have a different question but he not only charged both of these statutes but said to the jury that if they were violated plaintiff's decedent was chargeable with negligence per se by reason thereof and if such negligence was a contributing proximate cause of his injury and death plaintiff could not recover. The court was requested by counsel for defendant and prevailed upon to charge in the manner in which we have heretofore set out. These instructions were the concept of the law as urged and maintained in the trial court by the defendant after the overruling of the motion for a directed verdict. Having established the law to be as contended the defendant cannot in this court abandon that theory, take another and prevail. 5 C. J. S., 210, 213, 215, 218. 3 Am. Jur. 432. We do not have the question made on the general charge whether or not the violation by plaintiff's decedent of either §6310-34 or §6310-36, if established, was the proximate contributing cause of his death as a matter of law. The principle of estoppel applies as to the general

charge to preclude the defendant urging in this court that proximate cause was not a question of fact as related to the two sections under consideration.

### SECTION 6310-34 GC.

Sec. 6310-34 GC, in the particulars in which we have emphasized certain words presents some very interesting questions of construction some of which we merely advert to and do not decide.

It will be noted that the word "crosswalks" is twice employed in the section. It must be assumed that it means the same thing in both places. If so, a crosswalk is only found at an intersection and not at another place along the highway. In the instant case then, at the place of the accident, no crosswalk nor cinder path paralleled the highway at the place of the accident. The only crosswalk, if any, under consideration in this case which paralleled the public road, namely, Telegraph Road, was at the intersection of Sunset Blvd. with Telegraph Road and the only place where it paralleled Telegraph Road was where it crossed Sunset Blvd.

Webster defines crosswalks as "specially paved or marked paths crossing a street or road, for persons on foot." It is probable that the word is carried over from the horse and buggy days when at intersections, to keep pedestrians out of dust and mud, specially prepared walks of planks, cobble stones or brick were set in and across the street to be traversed. Today where streets are paved it is the practice to mark the boundaries of a crosswalk in some appropriate manner. It is evident that there was a crossing where Telegraph Road crossed Sunset Blvd. but within the contemplation of a penal statute it may be doubted if there was any crosswalk.

### EVIDENCE OF INABILITY TO SEE SIDEWALK.

There is nothing in the statute which as a matter of law required plaintiff's decedent to walk on the sidewalk to the west of Telegraph Road, although, in the exercise of ordinary care he may have been required to do so. The only purpose of §6310-34 is to define where a pedestrian shall not walk. Therefore the testimony that plaintiff's decedent did not see the sidewalk was competent and relevant upon his common law obligation to exercise ordinary care although, of course, it in nowise affected the application of §6310-34, GC. Further its admission was not prejudicial because the same testimony was admitted without objection.

It is urged by plaintiff that Sprung was not, at the time and place where he was walking when injured and killed, a pedestrian. This question has given the court concern but upon the authorities which we have considered it is our opinion that the law will not support this claim. It must be recognized, however, that plaintiff's decedent had at no time deviated from his purpose to travel Telegraph Road as a motorist and in his movement in the highway he was properly pursuing a plan to discover what, if anything, there was in the road ahead which impeded his progress and whether or not he could safely move forward as a motorist. Not only was there difficulty at the by-pass some three or four squares to the south but at the location of the two Graham automobiles which had jack-knifed at a distance of some 100 feet to the south and at the parked Essex. The flares which indicated danger ahead were but a short distance away from the place where plaintiff's decedent was walking when struck.

There is also a substantial question whether or not Sprung was moving at the time that he was struck in the vehicular traveled portion of Telegraph Road. This is indicated by the fact that at the time there were a number of automobiles parked along the west side of Telegraph Road, making it impossible where the cars were parked for ordinary motor traffic to move and making it highly improbable that such

traffic would move within a closer distance than three or five feet from the curb in the space between the parked Essex and the parked car of Mr. May which was approximately 100 feet to the south. When the outfit which the truck driver was operating struck the Essex it was not moving in that part of the highway which was the traveled portion thereof. The most convincing visual demonstration that the place where Sprung and Willis were walking when struck was not in the portion of the highway then traveled is found in the photographs, defendant's exhibits 1 and 2. In defendant's exhibit, 1, in particular, it will be noted that there is a space along the west curb and extending out for quite a distance, much more than three feet, darker in color than the remainder of the pavement, which clearly indicates that that part of the road was not customarily employed by vehicular traffic.

There is still another question raised under §6310-34, namely, could the jury have said that the crossing or crosswalks were an unreasonable distance apart. May the reasonable distance apart of the crossings vary dependent upon circumstances which confront a pedestrian? In this case it may be said that plaintiff's decedent had reason to be in the highway because of the condition ahead with which he was confronted and in which he, as a motorist, was vitally interested. Must the court, as a matter of law, say that in the situation presented a distance of 300 feet between intersections is a reasonable distance.

This section has generally been construed to have application to pedestrians who purpose to cross the highway and move to the other side thereof. Upon plaintiff's theory of this case Sprung had no intention of moving across the street. Of course, this purpose to cross the road was in the case by reason of the truck driver's testimony that Sprung before he was struck was in the middle of the highway and moving across it.

In Clark v Steward, supra, the court held that §6310-34 had application to the facts appearing and that a charge that the pedestrian and motorist had equal rights in the highway or streets without qualification was erroneous and the error could be urged upon general exception to the charge. Judge Stephenson in the opinion used some interesting qualifying language at page 273,

"Ordinarily the right of a pedestrian is neither superior nor inferior to the rights of the operator of a motor vehicle. They do have equal rights in the highway or street except in the face of a law that makes them unequal. This section is a police regulation reasonable in every respect. If there was a cinder path at the point in question, and that was a question for the jury, it was the duty of the plaintiff to follow it unless for some substantial reason he was required to cross the highway." (Emphasis ours).

It is urged that the court in the general charge did not with sufficient clarity make plain to the jury that a violation of §6310-34 was negligence per se. With this claim we cannot agree but if it be granted it would not be prejudicial because the court had, in the special charge requested by the defendant in the language chosen by its counsel, said to the jury that a violation of the section was negligence per se.

CONTRIBUTORY NEGLIGENCE.

We do not find that Sprung was chargeable with contributory negligence as a matter of law in failing to see or to look for the truck before he was struck. The trial judge charged Sprung's common law obligation to use his faculties of sight and hearing to apprehend the presence upon the street of the truck and to avoid danger. Knisely v Community Trac. Co., 10 Abs 603.

It follows that the trial judge did not err in refusing to give defendant's special charge, Number 11, before argument.

By supplemental brief and by letter counsel for defendant have called our attention to late cases as applicable to

the claim that plaintiff's decedent was chargeable with contributory negligence. We cannot within proper limits of this opinion discuss all of these later authorities nor in fact all of the cases cited in the original brief of defendant. We will, however, consider two of them.

**Smith v Caudel**, 935 Trumbull County Court of Appeals. It was held in this case that where a pedestrian steps from between two cars parked at the curb, with the intention to cross the street, and into the path of a motorist the defendant was entitled to a directed verdict. The second case, **Howald v Keefe** (26063, 27123, Supreme Court) Cuyahoga County Court of Appeals, a woman was struck by a truck passing a street car while she was in the act of leaving the curb in an effort to board the approaching car in violation of an ordinance. It was held that the defendant was entitled to a judgment as a matter of law. It is only necessary to set out the controlling facts in these cases to mark the distinction between them and the instant case. In the former case we see no similarity. If no one but the truck driver in the instant case had testified there would be some analogy between the Cuyahoga County Court of Appeals decision and this case but upon the testimony of plaintiff's witnesses there is no similarity whatever.

### SECTION 6310-36 GC.

The Court also gave defendant's special charge, Number 13, relating to §6310-36 GC. We doubt if upon any theory of this case Sprung could have been chargeable with the violation of §6310-36 GC, because be was not in the act of stepping into or upon the public road if he was walking where plaintiff's witnesss place him or if he was moving where the truck driver places him. His obligation, independent of §6310-34 GC, when he was in the highway was covered by his duty to exercise ordinary care under the circumstances which, of course, was a high degree of care.

If Sprung was moving within 2½ or 3 feet from the west curb and well within the line of parked automobiles it cannot be said as a matter of law that he must have looked at any given time because he had no reason to expect that any vehicle would be moving within the line of his path. His obligation is measured by the test of ordinary care under the circumstances.

### SECTION 12603 GC.

It is further asserted that the court erred in applying to the case the assured clear distance ahead statute. The trial judge was of opinion that inasmuch as the petition averred violation of the speed statutes that it required a complete charge on all speed statutes within which classification is §12603, GC. We doubt if the averment of excessive speed alone would put the court upon obligation to charge the assured clear distance ahead provision of the section. A closer question is raised by the specification of negligence that defendant's driver did not maintain a proper lookout in conjunction with the specifications of violation of the speed statute. We would not say that the court erred in charging the assured clear distance ahead provision of the section although we grant that it is a very close question. Inasmuch as the other specifications of negligence against the defendant are so abundantly established upon this record we would not hold that the giving of this charge on assured clear distance ahead, if erroneous, was prejudicial.

We find no prejudicial error in the general charge respecting the effect of a violation of §12603-1, GC. **Swoboda v Brown**, 129 Oh St 512, 524.

### MEASURE OF DAMAGES.

It is further claimed that the court erred in the charge regarding the measure of damage. The trial judge read to the jury the section of the code providing for the action for damages for "wrongful death" and further that it was for the exclusive benefit of the surviving spouse, the children and oth-

290

er nearest of kin of the decedent and said,

"In this case, of course, it is for the benefit of Mrs. Sprung and the son."

Then continued:

"The jury may give such damages as it may think proportioned to the pecuniary injury resulting from such death to the persons respectively, for whose benefit the action was brought. I may say to you at this time that it is not the function of the jury to divide any verdict that you may find if you find one for the plaintiff as between the wife and the son of the deceased because that is taken care of by another branch of this court."

And later in the charge,

"I will read to you once more the measure of damages. 'The jury may give such damage as it may think proportioned to the persons, respectively, for whose benefit the action was brought.' It is a pure question of pecuniary loss. In that connection you will take into consideration the evidence as to the age of the deceased, expectancy of life which is 27 years and the benefit he would have been in a pecuniary way to his next of kin."

It is urged that the court failed "to make clear to the jury that the jury should not try to supplant the entire wage which the deceased earned." The court "did not make it clear to the jury that it was loss which the surviving beneficiaries may have sustained for which they were compensating the beneficiaries and particularly that the court did not fix the proper measure of damage in that it did not set out the use of the present value method; that it should have reduced the damage to present worth." In support of these propositions the following cases are cited:

Cincinnati St. Railroad Co. v Keehan, 44 Oh Ap 75.

Railroad Co. v Floyd, 77 A. L. R. 1431.

Pitman v Merriman, 26 A. L. R. 589.
Liberty Highway Co. v Callahan, 24 Oh Ap 374; 13 O. Jur. 512.

Jones v Macedonia, 132 Oh St 341, directed to damages so excessive as to establish passion or prejudice, and Fromson v Reider, 127 Oh St 564, to the effect that it is the obligation of the trial judge to order a remittitur if the verdict is too high as a condition to overruling the motion for new trial.

Defendant interposed a general exception only to the charge. Insofar as the court charged the jury it was a correct exposition of the law. There certainly was no error of commission in reading the statute. Gas Co. v First Congregational Church, 126 Oh St 140, Beeler v Ponting, 116 Oh St 432. If counsel felt that the charge should have been more specific such request should have been embodied either in a special charge before argument or special instruction or request to charge at the conclusion of the general charge. The special charge which the court gave at the request of counsel for the defendant made no mention of "present worth".

In The Cincinnati St. Rd. Co. v Keehan, supra, the question was raised upon a request for special charge by defendant before argument wherein was specifically set forth the further elements of damage which defendant urges should have been included in the general charge here. The situation thus presented is entirely different from that before us wherein the court's attention was in nowise directed to that which defendant now urges upon this court. The charge in Liberty Highway Co. v Callahan, supra, disapproved by the Court of Appeals for Lucas County, Judge Williams writing the opinion says in part,

"You are confined to a calculation after your find for the plaintiff, if you do find for her, of what amount * * * of his earnings that he was capable of making and the probable time of his future life if he had not been killed, and the ratio of that earning which would have been used for family pur-

poses aside from his own' expenses."

Neither in form nor substance is the quoted charge like that which we have under consideration in the instant case. In the next sentence following the setting out of the foregoing charge Judge Williams says,

"The measure of damages in such case is the pecuniary loss sustained by the beneficiaries."

and cites **Paragon Refining Company v Higbea, Admr., 22 Oh Ap 440.**

We have examined the cases cited from states other than Ohio and find nothing particularly helpful.

Although a different rule than is found in Ohio would not bind us, we find no authorities which would support the claim that the charge in this case was erroneous or prejudicial.

We know of no instance where it has been held to be prejudicial to read a statute defining the damages which a jury may award and, of course, there are many that hold that it is proper. **Simko v Miller, 133 Oh St 347; Toledo Street Railway Co. v Mammet, Admr., 13 O. C. C. 592, 600.** The language employed by the court is not only supported by the statute but by pronouncements in **Russell v Sunbury, 37 Oh St 372; Steel v Kurtz, 28 Oh St 191; Wolfe v Railway, 55 Oh St 517; Cincinnati Street Railway Co. v Altemeier, 60 Oh St 10.**

We have also examined the standard books on instructions to juries and find instructions substantially the same as in the instant case set out in Weygandt's Ohio Charges, 2nd Edition, Nos. 1373 and 1374. There is no charge on damages in wrongful death cases in Kinkeads. Branson carries a charge on present worth taken from a state other than Ohio, citing an Illinois case, **Webster Manufacturing Co. v Mulvanny, 48 N. E. 168.** In **Chester Park Co. v Schulte, 120 Oh St 291,** Chief Justice Marshall said,

"The charge of the court in the instant case on the measure of damages was entirely free from error: 'You may award such damages as you may think proportionate to the pecuniary injury resulting from the death to those for whose benefit the action was brought, that is to say, you may award such damages as the persons for whom this action is brought might reasonably have been expected to have received from the earnings of the deceased had he lived and from his estate at his death,' This charge was very carefully patterned after the provisions of §10772 GC. In actions for wrongful death, there are no definite standards for determining the amount which the beneficiaries might reasonably expect to receive, and the amount is purely a matter of opinion, and in no sense a matter of computation."

The charge in this case on the measure of damages is controlled by **State v Schaeffer, 96 Oh St 215; Scott v State, 107 Oh St 475.**

Seventh Assignment of Error
EVIDENCE OF FUNERAL EXPENSES, ETC.

The seventh assignment is that the court erred in admitting evidence of the hospital, doctor and funeral expenses aggregating the sum of $1034.60. Appellant cites Harry, Admr. v Seibel, 29 N. P. (N. S.) 82; C. H. & D. Rd. Co. v Taylor, 3 A. L. R. 30; **Munn v Herriff, 25 Abs 571; Gaus, Admr. v Penna Rd. Co., 56 Oh Ap 299.** Appellee cites **Buchanan v Battson, Admrx., 13 Abs 551** and comments upon §10509-168 which makes provision for distribution to the beneficiaries of any sum secured by reason of damages for wrongful death which provides:

"In making such distribution the court may also consider funeral expenses and other items of expenses incurred by reason of the death."

Munn v Herriff is not applicable to the situation presented in this case but all the other cases cited by counsel for

the defendant support the claim of the inadmissibility of the testimony. In each of these pertinent cases the funeral expenses which the court held were not allowable, had been incurred by the surviving spouse by reason of the death of his wife. Likewise in Buchanan v Battson, supra. There, is conflict between these adjudications but there may be distinction drawn between some of the cited authorities and the instant case in that here the funeral expenses, medical and hospital bills were those of the husband for which his estate was liable and not his surviving spouse or son. So that it might be held in this case that funeral expenses, etc. could not be awarded the plaintiff without conflict with the decision of this court in Buchanan v Battson.

Outside of Ohio the question is considered in 17 C. J. 1338 wherein it is said:

"While under some decisions adhering to the strict rule that the sole measure of damages is the pecuniary loss occasioned by the destruction of the life of the deceased person, there can be no recovery for medical or funeral expenses, the weight of authority is to effect that recovery can be had for the medical and funeral expenses which have been paid by the beneficiaries, or for which they are liable, provided reasonable value thereof is shown, and provided it appears that the amounts charged are reasonable."

It may be noted that the proof in this case would not meet the requirement of the majority rule as announced in the text of C. J. in that it does not appear that the funeral expenses, etc., have been paid by the beneficiaries nor does it appear that they are liable for them. It is our judgment that Gaus, Admr. v Penna Rd. Co. was properly decided and is controlling of our question. It holds, Syl. 1,

"In an action for wrongful death brought under §§10509-166 and 10509-167, GC, the funeral expenses of the decedent, not being a pecuniary injury to any of the surviving beneficiaries, are not recoverable.

Syl. 2:

"By the terms of §10509-168 GC, the Probate Court in making a distribution of proceeds of such action among the beneficiaries, may consider funeral expenses incurred by any of the beneficiaries by reason of the death."

In this case it was held that the surviving husband who had negligently contributed to the injury and death of his wife could not recover damages for funeral expenses which he had incurred. There is nothing inconsistent in this holding with the determination in Buchanan v Battson. The court in the opinion in the Gaus case cites and comments favorably upon C. H. & D. Rd. Co. v Taylor, 17 C. D. 757 decided under former §10772 analogous to §10509-168 wherein it was held that funeral expenses were not properly included in the measure of damages to be awarded under the Section. In administering §10509-168 the Probate Court could very properly under the law, in apportioning the money to be distributed to the beneficiaries, award to a surviving husband funeral expenses which he had incurred and for which he was liable by reason of the death of his former wife. However, as the widow or a surviving child would not be liable for the funeral and medical expenses of the husband and father, the court might make no allowance from the fund for such expenses.

Certainly there appears no good reason why provision should not be made in §10509-167 for the allowance of funeral, medical and hospital expenses as the subject of award as damages in the action but it does not so provide. Damages are confined to the "pecuniary injury resulting from such death, to the persons, respectively, for whose benefit the action was brought." It cannot be said that these expenses are pecuniary injuries to the beneficiaries in this case.

Inasmuch as the testimony was ad-

mitted disclosing the amount of funeral, medical and hospital expenses, though it is probable that this sum was improperly included in the general verdict and it should be reduced by that amount.

## EVIDENCE OF PLANS FOR SON.

It is further asserted that the court erred in admitting evidence that Mr. and Mrs. Sprung had purposed to send their son, Ralph, to State University for a course in medicine when he had, in about six months, completed his high school work. Without comment we are satisfied that this testimony was properly admitted.

## COMMUNITCATIONS WITH JURY AFTER RETRIAL.

The 8th assignment of error is the refusal of the Court to grant the request of the jury for further instructions after it had retired for deliberation. The question is brought on to the record by the affidavits of Lawrence A. Wooley, a member of the jury, one of counsel for the defendant, the testimony of George R. Gaumer, the foreman of the jury, Thomas A. Curran, Bailiff of the Trial Judge, and the statements of the Trial Judge made at the time the motion for new trial was argued after the testimony of Mr. Gaumer had been taken.

We give no particular attention to the affidavit of Mr. Wooley because it is not as definite as that of Mr. Gaumer, who was the foreman of the jury and was in better position to say just what had occurred.

It may fairly be stated that from the sources heretofore indicated it appears that after the jury had retired for deliberation one of the counsel for defendant and one of counsel for the plaintiff were seated in a room adjacent to the jury room. The jury had retired about 4:15 in the afternoon and at about 4:50 of the same afternoon the Bailiff answered to a knock on the jury room door and conferred with a juryman, neither counsel hearing what was said between the Bailiff and the

juror. As a result of the conference the foreman addressed a written communication to the trial judge which was taken by the Bailiff to the Judge, counsel also going over and into the consultation room. In the presence of the Bailiff and counsel the Judge examined the paper and stated in substance to the Bailiff, "Tell them I have already instructed them on the law."

Counsel for defendant in his affidavit said that the trial judge tore up the paper and dropped it on the floor and it seems it was not available at the time of the hearing on the motion for new trial, although, the trial judge was of opinion that he had not torn it up nor destroyed it and it now appears in the record. This is the note:

"Due to not knowing of the sidewalk does he have the same privilege of the road as the truck?"

Respecting this note Mr. Gaumer said in his testimony that he asked "if there was any further information as to the law regarding pedestrians on the highway."

Counsel have briefed the question raised by this assignment of error extensively and we have been favored by a brief amicus curiae. The brief amicus curiae was occasioned by reason of the fact that when written the author had a similar question pending in a case in Clark County (since decided) **Hubbuch v County Commissioners, etc.,** No. 399, 28 Abs 666, decided April 18, 1939, unreported.

We are satisfied that upon the contents of the note it must be said that it was a "request of the jury to be further informed on the law of the case" and if we had only the note without other circumstances appearing we would have very strong proof of the violation of the statute.

A trial judge cannot be too careful about communications between the judge and the jury after it has retired. If there is the suggestion that the jury desires further information relative to the law of the case or is uncer-

tain as to the testimony the judge should transmit the requisite information to the jury in open court in the presence of counsel or after counsel have had opportunty to be present.

Whenever it has been called to our attention that a judge has communicated with a jury through his bailiff there arises a difference of recollection as to the communication actually given to the jury.

We do not, however, deem it necessary to analyze the many cases cited by counsel touching the violation or non-violation of the Section or the constitutional questions which have been urged and well briefed.

This claim can be decided upon the same hypothesis as Hubbuch v County Commissioners, which opinion was just recently released.

The outstanding fact in this record is that counsel for both parties were present, had cognizance of what was occurring in the attempt of the jury to communicate with the judge, and of his response thereto, and especially as to the manner in which the query was transmitted to the judge and his reply communicated to the jury. True, counsel did not see the note, but there is nothing to indicate that they could not have done so had they asserted their desire to see it. Being cognizant of what was going on, charged with the knowledge of the error, if such it was, and under the obligation of protecting their clients, the duty enjoined upon them then and there, if they deemed the action prejudicial was to object to the course that the trial judge was following. With knowledge sufficient to put them upon notice ▮▮▮▮▮▮ that the Court was acting in an irregular manner, they could not stand by, do nothing, interpose no objection, and then after the jury had returned a verdict, elect to stand upon the error of which they had knowledge all the while. In the situation thus presented counsel were charged at all times with the duty of speaking when it was their obligation to speak. Almost any error that may be committed during the trial of a cause may be waived by counsel. Evidence which clearly is incompetent or irrelevant may be accepted and given probative effect if it is not objected to when received. At every stage of the trial of a case procedural steps may be permitted by waiver which would be prejudicial error if timely objection was made thereto.

If counsel or either of them had specifically brought to the attention of the trial judge that it was their desire that the jury be further instructed and the court had then refused, the error now urged would be properly raised.

Ninth Assignment of Error.
EXCESSIVENESS OF VERDICT.

Although excessiveness of the verdict is not assigned as error in the printed brief of defendant it was ▮▮▮▮▮▮ urged on the motion for new trial and in one of the briefs in this court. We do not find this claim well made nor that the verdict is against the manifest weight of the evidence.

Plaintiff's decedent had been steadily employed for fifteen years and at the time of his death was serving in a managerial capacity. He was under Civil Service with tenture of position secure. So far as the record discloses it must be inferred that he was in good health. He was attached to a highly reputed University and there is no reason to believe that his income in the future would be reduced. During the years of his expectancy of life had his earning capacity continued as it existed at the time of his death, his total income would have been upwards of $60,000.00. The verdict as it will be fixed by the judgment entry in this court will be less than one-half of this sum.

Courts in construing the measure of damages under the wrongful death statute have said that the jury is to be given wide latitude in fixing the amount to be awarded limited only by the language of the statute.

CONCLUSION.
We have considered all assignments

and find no error prejudicial to the defendant in this record except in the admission of the testimony as to the funeral, hospital and medical expenses. The judgment will be reduced by the amount of these expenses, namely, $1034.60.

The judgment of the Common Pleas Court will be affirmed in the amount of $30,000.00 less the sum of $1034.60.

GUERNSEY, J., concurs.
BARNES, J., dissents.

## APPLICATION FOR REHEARING

No. 2989. Decided June 14, 1939

BY THE COURT:

Submitted on application of appellant for rehearing and upon motion for certification of conflict.

The application is presented under 14 headings, many of which it is not necessary to discuss because they are not dispositive of any of the ultimate questions of law decided.

In view of the many questions urged for the second time in the application it appears that counsel are desirous of having our opinion on the merits construed. We would commend another reading of our opinion.

The first exception noted is that in our statement of facts we said that the testimony of the witness, Kohne, "gives the version of the happenings which requires the inference that the front of the outfit or the truck struck the plaintiff's decedent and Willis". We did not mean to say nor did we say that the front of the truck struck plaintiff's decedent but that the front of the outfit or the truck struck him. This observation was made to differentiate between the truck and the semi-trailer striking plaintiff's decedent. The matter commented on is immaterial as it is altogether probable that the jury accepted the theory of the plaintiff to the effect that the skidding trailer struck plaintiff's decedent.

The second, fifth, seventh and eighth observations are directed to our discussion of the language of §6310-34, GC.

Nothing of advantage will result by further comment on this section. It was discussed at great length in the briefs and we deemed it worthy of attention and expressed our opinion upon the subject matter of the section. However, what we said was in no sense determinative of any controlling question in the case because the trial judge had charged the jury without qualification that a violation of the section was negligence per se leaving the determination whether or not such violation was a proximate cause of Sprung's injuries and death to the jury. So that the discussion relative to the possibility that the jury may not have found the statute to have been violated is largely academic. However, we reiterate all that we said respecting cinder paths or crosswalks paralleling Telegraph Road and we reassert that there is nothing in the section which made it mandatory upon Sprung to walk upon the sidewalk and that it provided where he should not walk and not where he should walk. Without respect to the date when this particular section was enacted we are satisfied that the term "crosswalk" therein employed harks back for its interpretation to a time prior to the automobile.

Upon the observations respecting the contributory negligence of plaintiff's decedent we are content to rely upon our original decision.

The third ground of the application directs attention to **Smith v Zone Cab Company, et, 135 Oh St 415**, which we cited upon the question of Sprung's contributory negligence upon the claim of the appellant that his violation of §6310-34, GC, constituted a proximate cause of his injuries as a matter of law. Notwithstanding counsel's assurance that this case has no application because the facts are not identical with the instant case it is our judgment that it is a blue-bottle decision and that no distinction can be made in the principle there announced and the principle controlling in this case. The very first statement in the opinion of Judge Day states the question there decided:

"The question is whether the mere violation of an ordinance which prohibits a pedestrian from crossing between street intersections is to be deemed, as a matter of law, the proximate cause of appellant's injuries."

The facts in the case disclose clearly that Smith, when he was struck, was violating the ordinance which prohibited a pedestrian from crossing between street intersections. Of course, there were other facts in the case relating to the question of due care of plaintiff but the narrow and controlling question presented and determined is identical with that appearing in this case.

The fourth observation is directed to our observation respecting the "invited error" on behalf of defendant. We made plain in the decision that the action of the defendant which prevented its urging error to the general charge as related to proximate cause as a matter of law did not preclude its right to urge this question as related to the motions for directed verdict and for judgment veredicto non obstante. (See page 13, 2nd paragraph, our decision). The principle upon which we relied for the application of "invited error" is again stated in Gregg, et v Clapham, et, 6 Oh Ap 367, wherein it is said after quoting an instruction requested by defendants below,

"This charge as to law was given by the trial judge at the request of the defendants below and we do not see how they can now complain."

The sixth claim is directed to our observation respecting the admissibility of testimony as to the knowledge of Sprung of the sidewalk along Telegraph Road. We cited the question that had been propounded to Kohne and his answer, without objection, to show that like testimony of Willis, accepted under objection, could not have been prejudicial. Of course, we were further of opinion that it was competent for the reasons set forth. Opinion, pp. 10, 15, 16.

The eleventh and twelfth grounds of the application are sufficiently considered in our opinion on the merits.

The thirteenth ground assigned relates to excessiveness of the verdict and takes exception to our statement that excessiveness of verdict was not assigned as error in the brinted brief. Technically, we were in error in our statement. Practically, we were correct. It is true that this ground is assigned under number 10 but there is not one word of discussion relative thereto in the printed brief of defendant-appellant. However, all of this is beside the question because we gave careful and extended consideration to this assignment of error in our former opinion.

The application for rehearing will be overruled.

The motion of appellant is for certification of conflict of our judgment with Barber v Kihlken, Admr., 17 Abs 599; Lazzara v Hart, 45 Oh Ap 368; Moor v Merkle, 47 Oh Ap 533; Hoge v Soissons, 48 Oh Ap 221. A careful reading of Lazzara v Hart, supra, discloses that it is not in conflict on the question presented.

In the instant case the trial judge charged that violation of §12603-1, GC, was negligence per se. This is in conflict with the other cited cases. However, we did not give extended discussion to the part of the charge directed to this statute because we are satisfied, if erroneous, it is not prejudicial under the two issue rule. Sites v Haverstick, 23 Oh St 626; Schmidt v Kinney, 19 Abs 261; Armour & Co. v Yoder, 11 Abs 186.

It is our judgment that the charge of the trial court in the particular under consideration was not prejudicially erroneous and intended to so state at the bottom of page 20 of our opinion, although it seems that -1 after §12603 may have been stricken from the copies sent to counsel.

In Skinner v Rd. Co., 127 Oh St 69, wherein it is held that a violation of §12603, GC, as relates to the assured clear distance ahead portion thereof is negligence per se:

"It is contended by plaintiff in error that the decisions in the cases of **Heidle v Baldwin, 118 Oh St 375,** and **Geo. Ast. Candy Co. v Kling, 121 Oh St 362,** * * *, should be considered as controlling in the instant case and this new language in §12603, GC, does not declare a definite rule of conduct. It must be remembered that in these cases this section of the code was not under consideration. It must be remembered also that the other language of this section has repeatedly been held a sufficiently definite and certain rule of conduct to make its violation negligence per se.

In the opinion in the case of **State v Schaeffer, 96 Oh St 215,** appears this expression, at page 236, * * * '§12603, GC, is as definite and certain on the subject matter and the numerous situations arising thereunder as the nature of the case and the safety of the public will reasonably admit.' "

The Chief Justice in this latter quoted part of the opinion is referring to that part of §12603, **GC,** which makes it illegal to operate a motor vehicle upon the public roads and highways at a speed greater or less than is reasonable or proper, etc. It will require very fine differentiation to make distinction between this part of §12603, **GC,** and the language of §12603-1, **GC.** If the former meets the requisites of definiteness in prescribing a course of conduct we perceive no good reason why the latter does not also define a specific course of conduct.

We do not understand that it is our obligation to certify that there is conflict of judgment under the constitution merely because there is a difference of pronouncements of this court and another court of appeals upon some one question presented in the case. The conflict to which the constitution relates is upon some matter which is so material to the judgment that it is determinative thereof. If it be granted that the court erred in charging that a violation of §12603-1, was negligence per se this alone would not require us to reverse the judgment.

The motion for certification will be overruled.

HORNBECK, PJ. & GUERNSEY, J., concur.